

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**STEVEN FEIRSON**

steven.feirson@dechert.com
+1 215 994 2489 Direct
+1 215 655 2489 Fax

May 2, 2023

**VIA ECF AND EMAIL**

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re: *Pentacon BV et al. v. Vanderhaegen et al.*, No.: 23-cv-2172 (KPF)
    Plaintiffs' Response to Defendant Vanderhaegen's Pre-Motion Letter

Dear Judge Failla:

Plaintiffs Pentacon and Baltisse respectfully submit this letter in response to Defendant Vanderhaegen's pre-motion letter (ECF No. 18) seeking leave to move for dismissal of the claims against Guy Vanderhaegen, the Guy Vanderhaegen Revocable Trust ("Trust"), Pelican Invest, LLC ("Pelican Invest"), and Pelican International, LLC ("Pelican International") (together, "Defendants"). This is no mere case of "seller's remorse." As alleged in Plaintiffs' detailed 50-page Complaint, Defendants schemed for at least two years to deprive Plaintiffs of accurate information about Origis and its project pipeline. Through a series of deliberate misrepresentations, and by withholding information that would have exposed their deceit, Defendants induced Plaintiffs into selling their interest in Origis at a valuation of under $200 million—which Defendants knew at the time to be a "golden deal"—*i.e.*, a small fraction of its true value. Compl. ¶¶ 19, 79–82, 100. Defendants then turned around and sold the company for $1.4 billion just a few months later, enriching themselves at Plaintiffs' expense. Contrary to Defendants' arguments, nothing in the Share Redemption Agreement ("SRA") or applicable law immunizes them from their fraud, breaches of fiduciary duty, and breaches of contract.

### A. Plaintiffs Did Not Release Their Claims Against Any of the Defendants

Defendants mischaracterize Section 9.11 of the SRA as a mutual release of all claims against Non-Party Affiliates. The release is limited "to the extent provided in the Transaction Documents." SRA § 9.11. And the SRA expressly contemplated claims against affiliates and their representatives "in cases of Fraud." *See id.* § 4.8. This is a case involving fraud, so none of Plaintiffs claims were released. The purported release would be unenforceable anyway. A principal's release of claims against its fiduciary is valid where "at the time of the release, the principal is aware of information about the fiduciary that would make reliance on the fiduciary unreasonable." *Pappas v. Tzolis*, 20 N.Y.3d 228, 233 (2012). That is, the "waiver[] must be made where there is no longer a relationship of trust." *DeBenedictis v. Malta*, 140 A.D.3d 438, 439 (1st Dep't 2016). The *Centro* case that Defendants cite involved the release of a fiduciary under circumstances where the plaintiffs had reason to distrust the fiduciary and took no steps to protect themselves. *See Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 278–79 (2011). Here, by contrast, Plaintiffs had no reason to believe that the Defendants would lie to them—particularly because Vanderhaegen had been a trusted business partner for



The Honorable Katherine Polk Failla
May 2, 2023
Page 2

many years. *See, e.g.*, Compl. ¶¶ 12, 45, 85. Plaintiffs also took specific measures to protect themselves, including bargaining for a warranty that all material information had been disclosed, a promise not to permit an Origis Sale for a year, and an express carve-out for "cases of Fraud." *See* SRA §§ 4.4, 4.8, 5.5. Under these circumstances, any release of claims would be invalid, and where the enforceability of the release depends so heavily on the facts, this question cannot be adjudicated on a motion to dismiss.

### B. Defendants Ignore the Particularized Facts Pled to Support the Fraud Claims

Defendants note that general allegations of fraud will not satisfy Rule 9(b)'s particularity requirement. But they completely ignore the Complaint's specific (and extensive) allegations of the material misrepresentations and omissions they made about Origis and its assets. The Complaint alleges that on specific dates, Defendants made numerous concrete misrepresentations regarding Origis, including via emails to Plaintiffs. *See, e.g.*, Compl. ¶¶ 60, 63, 65, 68, 71, 78. It likewise specifically describes why those statements were fraudulent, detailing what Defendants knew and when as to the true value of Origis. *See, e.g.*, *id.* ¶¶ 61, 64, 66, 72, 79–81.

Defendants try to characterize their deliberate falsehoods as mere "statements of opinion." But Defendants repeatedly misrepresented facts, including by making false statements about Origis and its principal assets. *Id.* ¶¶ 60–66, 71–72, 78–79. And Defendants deliberately concealed the facts that investment bankers had been enlisted to value assets of the company, that the valuation conclusions of these bankers substantially exceeded the values Defendants were representing to Plaintiffs, and that Defendants had performed their own analyses showing values in excess of five times the values they presented to Plaintiffs. *Id.* ¶¶ 21, 79–82. Thus, at a minimum, Plaintiffs have plausibly alleged that Defendants "distributed a set of false and fictitious" valuations while "intentionally withh[olding] other accurate projections" of value in order to purchase Plaintiffs' shares at an artificially low price. *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 274, 285–86 (1987). Moreover, even statements of opinion are "actionable as fraud if the plaintiff can plead and prove that the holder of the opinion did not subjectively believe the opinion at the time it was made and made the statement with intent to deceive." *M&T Bank Corp. v. McGraw Hill Cos.*, 126 A.D.3d 1414, 1416 (4th Dep't 2015). Such lack of sincerity is an eminently reasonable inference to be drawn from the Complaint. Indeed, the "only time" Defendants used the false numbers provided to Plaintiffs "was in valuations seeking to repurchase equity interests in [Origis]." *Lickteig v. Cerberus Capital Mgmt., L.P.*, 589 F. Supp. 3d 302, 324–25 (S.D.N.Y. 2022).

The Complaint likewise adequately pleads reasonable reliance. *See, e.g.*, Compl. ¶¶ 68–69, 85, 129, 136, 144. To begin with, "the question of what constitutes reasonable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss." *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1045 (2015). Here, Plaintiffs have alleged that they trusted Defendants, who had "superior knowledge or means of knowledge" about Origis, *Epiphany Cmty. Nursery Sch. v. Levey*, 171 A.D.3d 1, 10 (1st Dep't 2019), as well as fiduciary duties that rendered Plaintiffs' reliance "all the more reasonable," *Cordaro v. AdvantageCare Physicians, P.C.*, 208 A.D.3d 1090, 1092 (1st Dep't 2022) (citation omitted). In addition, Plaintiffs demanded a specific warranty that they had been given complete and accurate information. SRA § 4.4. "[E]ven sophisticated plaintiffs are not required . . . to 'conduct their own audit' or 'subject their



The Honorable Katherine Polk Failla
May 2, 2023
Page 3

counterparties to detailed questioning' where they have bargained for representations of truthfulness." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 496 (S.D.N.Y. 2012) (alteration adopted) (quoting *DDJ Mgmt., LLC v. Rhone Grp. LLC*, 15 N.Y.3d 147, 156 (2010)).

### C. New York Law Applies to All of Plaintiffs' Claims

Defendants seek to wriggle free from Plaintiffs' fiduciary duty claims by suggesting that they had no fiduciary duties under Belgian law. The SRA, however, provides that "any claim arising out of *or in connection with* this Agreement shall be governed by, construed and enforced in accordance with" New York law "without giving effect to any conflict-of-law rules or principles." SRA § 9.12 (emphasis added). And under New York law, shareholders in a closely held corporation are owed fiduciary duties from officers, directors, and their fellow shareholders. *See Am. Fed. Grp. v. Rothenberg*, 136 F.3d 897, 905 (2d Cir. 1998). Indeed, Vanderhaegen himself acknowledged in an email that he had duties of disclosure and candor to Plaintiffs. Compl. ¶¶ 68, 85. To the extent Defendants rely on a foreign law expert to try to justify their deception, Plaintiffs will show through their own expert that Belgian law recognizes duties sufficiently analogous to the fiduciary duties under New York law that it would be a distinction without a difference. In any event, a dispute over the applicability and scope of foreign law will require further discovery, evaluation of competing expert testimony, and is not ripe for decision on a motion to dismiss.

### D. Plaintiffs Have Stated Plausible Claims for Breach of Contract

Defendants argue that the SRA permits claims only against Origis Energy and Pelican International and that the Complaint fails to state claims for breach of § 4.4 (the "Information Warranty") and § 5.5 (the "No Origis Sale" provision) of the SRA. They are wrong again.

*First*, the Complaint alleges that Vanderhaegan exercised absolute domination and control over the Trust, Pelican Invest, and Pelican International to commit a fraud or wrong. Compl. ¶¶ 35–37, 40. These entities were effectively Vanderhaegen's alter egos for his business dealings. And to the extent Defendants dispute this, the issue is one of fact that may not be resolved on a motion to dismiss. *See, e.g.*, *Sphere Digital, LLC v. Armstrong*, 2020 WL 6064156, at *5–6 (S.D.N.Y. Oct. 14, 2020).

*Second*, the Complaint more than plausibly states a claim for breach of contract. Plaintiff bargained for the Information Warranty and the No Origis Sale clause to ensure fair treatment where Defendants controlled access to the critical information. *See* Compl. ¶¶ 90, 93, 154, 161. The Complaint alleges that Defendants breached these obligations to Plaintiffs by providing false and misleading information about the business and its assets even while they were simultaneously pursuing what they knew, but Plaintiffs did not, to be a sale for the much higher intrinsic value of the company. Plaintiffs insisted on these provisions to protect against the very conduct in which Defendants engaged. Defendants should not be permitted to escape the contractual protections afforded Plaintiffs in order to enrich themselves in this way.

The Honorable Katherine Polk Failla
May 2, 2023
Page 4

Dated: May 2, 2023

Respectfully submitted,

DECHERT LLP

By: /s/ Steven B. Feirson
    Steven B. Feirson (*pro hac vice*)
    Cira Centre
    2929 Arch Street
    Philadelphia, PA 19104-2828
    Tel. 1 215 994 2489
    steven.feirson@dechert.com

    Matthew L. Mazur
    Three Bryant Park
    1095 Avenue of the Americas
    New York, NY 10036-6797
    Tel. 1 212 698 3500 Ext. 7487
    matthew.mazur@dechert.com

    160 Queen Victoria Street
    London EC4V 4QQ
    United Kingdom
    Tel. +44 20 7184 7487

    David L. Attanasio
    1900 K Street, NW
    Washington, DC 20006-1110
    Tel. 1 202 261 3379
    david.attanasio@dechert.com

    *Attorneys for Plaintiffs Pentacon BV and Baltisse NV*

cc:  All Counsel of Record (via ECF)