

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**STEVEN FEIRSON**

steven.feirson@dechert.com
+1 215 994 2489 Direct
+1 215 655 2489 Fax

May 2, 2023

**VIA ECF AND EMAIL**

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re: *Pentacon BV et al. v. Vanderhaegen et al.*, No.: 23-cv-2172 (KPF)
    Plaintiffs' Response to Defendant Origis USA LLC's Pre-Motion Letter

Dear Judge Failla:

Plaintiffs Pentacon and Baltisse respectfully submit this letter in response to Defendant Origis USA LLC's pre-motion letter (ECF No. 19), seeking leave to move for dismissal of the claims against Origis USA. Origis USA was no mere independent, innocent bystander to the other Defendants' fraud, breaches of fiduciary duty, and breaches of contract. To the contrary, Origis USA was the instrumentality that the Defendants, including Vanderhaegen, the company's CEO, used to accomplish the unlawful conduct alleged in the Complaint. As the entity with all of Origis' operations, it was the source of the information upon which the dealings of the parties proceeded, its employees were used to shape the false and misleading nature of the information provided to Plaintiffs, and its CFO was, unsurprisingly, a key participant in Defendants' scheme. In other words, Origis USA's direct and active participation was *essential* to the scheme's success. No contractual provision or principle of corporate law allows the company to escape liability for playing that type of role.

### A. Origis USA was Essential to the Fraud and other Unlawful Conduct

Origis USA suggests that any unlawful conduct occurred *only* at the level of Origis USA's parent entity and that Origis USA was, in effect, hermetically sealed off from that entity. This is simply not true. Vanderhaegen was the common link between Origis USA, Origis Energy, and the other Defendants. The organization chart in Origis USA's pre-motion letter obscures this fact only by ignoring Vanderhaegen's position at all levels of the organization, both before and after the buyout:





The Honorable Katherine Polk Failla
May 2, 2023
Page 2

It was in his capacity as CEO and President of Origis USA that Vanderhaegen controlled Origis USA's operations—including the flow of information about the business, assets, and project pipeline to Plaintiffs. Compl. ¶¶ 44–45. As CEO and President of Origis USA, Vanderhaegen engaged the assistance of other high-ranking Origis USA employees and officers to prepare the valuations at issue, with the further assistance of investment bankers enlisted by the company. *Id.* ¶¶ 19–21, 44, 79–82. Origis USA therefore participated in both the misrepresentations made to Plaintiffs and the concealment of the true facts about the business and its assets that were withheld from Plaintiffs in order to accomplish the Defendants' scheme.

Furthermore, Origis USA directly participated in the buyout transaction under Vanderhaegen's direction and control, securing the financing for the buyout and enabling payment of the fraudulently low purchase price to Plaintiffs by issuing a dividend specifically for that purpose. *See* SRA § 2.1(c)–(d), (f). In sum, Origis USA was inextricably and intimately involved in all of the violations of law described in the Complaint. Knowledge of the full depth, nature, and significance of that involvement awaits the completion of discovery. It is not a proper subject of a motion to dismiss.

### B. The Complaint Adequately Specifies Origis USA's Role in the Fraud

Origis USA also seeks dismissal of the Complaint on the ground that it supposedly engages in "impermissible group pleading." But it ignores that Defendants operated as a common enterprise. In particular, the Complaint alleges that Defendants "act[ed] as one combined, unified entity under the common control of Vanderhaegen." Compl. ¶ 40. With respect to Origis USA, the Complaint specifically alleges that Vanderhaegan has, at all relevant times, served as a company officer (*i.e.*, CEO and President) and "exercised full operational control" over the company. *Id.* ¶¶ 12, 39, 44. That is, the company's actions—like those of the other Defendants—ran through Vanderhaegan, who "acted at all relevant times and continues to act on behalf of and through the other Defendants in accomplishing the violations of law set forth in th[e] Complaint." *Id.* ¶ 40.

"Even under Rule 9(b)'s heightened pleading standard, 'there is no fixed requirement . . . to identify a single entity within the group on pain of dismissal.'" *Gibson v. Bartlett Dairy, Inc.*, 2022 WL 784746, at *8 (E.D.N.Y. Mar. 15, 2022) (alteration in original) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015)). "Rather, where a plural author is implied by the nature of the representations," "group pleading may satisfy the source identification required by Rule 9(b)." *Id.* (alteration adopted; internal quotations omitted). Such is the case here. The Complaint alleges that Defendants were interrelated entities that operated in conjunction, through Vanderhaegan, to carry out a common scheme. Hence, the Complaint does not employ "impermissible group pleading."

### C. Origis USA Is Liable for Defendants' Breaches of Fiduciary Duty and Contract

Origis USA separately argues for dismissal of the claims for breach of fiduciary duty and breach of contract. None of its arguments has merit.

Dechert
LLP

The Honorable Katherine Polk Failla
May 2, 2023
Page 3

### a. Breach of Fiduciary Duty

Origis USA argues that it cannot be liable for breach of fiduciary duty because, as a Delaware limited liability company, it does not have any fiduciary duties. But the authority it relies on is inapposite, and its position makes little sense in the context of a close company buyout transaction like this one. The reason courts have generally refused to impose liability on companies for fiduciary duty claims involving their directors and officers is that such liability "shift[s] the cost of the directors' breach from the directors to the corporation and hence to the shareholders, the class harmed by the breach." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 540 (Del. 1996) (citation omitted). That rationale does not hold here, where Origis USA's CEO and other high-ranking company officers weaponized their insider positions to induce a redemption of Plaintiffs' shares in order to harm *them* by *eliminating* them from the company. At a minimum, Origis USA provided the knowing assistance necessary to accomplish, *i.e.*, aided and abetted, the alleged breaches of fiduciary duty, causing damage to Plaintiffs as a result. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006).

### b. Breach of Contract

Origis USA likewise claims that it cannot be liable for breach of contract because it was not a party to the relevant provisions of the SRA. But corporate formalities do not protect a non-signatory company from being held liable for breach of contract in these circumstances. First, this case deals with a close corporate structure where all of the entities—both those that signed the SRA and those that did not—were under the effective control of Vanderhaegen. Second, Origis USA's role as set out above, including its specific participation in the negotiation and execution of the SRA acting through its CEO Vanderhaegen, demonstrates that it "intended to be bound by that contract." Compl. ¶ 40; *see, e.g.*, *Horsehead Indus. v. Metallgesellschaft AG*, 239 A.D.2d 171, 171–72 (1st Dep't 1997); *see also Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("New York law recognizes 'reverse' piercing, which, as here, seeks to hold a corporation accountable for actions of its shareholders."). Again, the resolution of these issues concerning the use of the corporate form to escape liability, especially in light of the interlocking nature of the corporate structure and its subservience to Vanderhaegen, requires the development of a full factual record. It should not be decided at the motion-to-dismiss stage based upon predictions of counsel as to what the facts ultimately will show.

The Honorable Katherine Polk Failla
May 2, 2023
Page 4

Dated: May 2, 2023

        Respectfully submitted,

        DECHERT LLP

By:  /s/ Steven B. Feirson
      Steven B. Feirson (*pro hac vice*)
      Cira Centre
      2929 Arch Street
      Philadelphia, PA 19104-2828
      Tel. 1 215 994 2489
      steven.feirson@dechert.com

      Matthew L. Mazur
      Three Bryant Park
      1095 Avenue of the Americas
      New York, NY 10036-6797
      Tel. 1 212 698 3500 Ext. 7487
      matthew.mazur@dechert.com

      160 Queen Victoria Street
      London EC4V 4QQ
      United Kingdom
      Tel. +44 20 7184 7487

      David L. Attanasio
      1900 K Street, NW
      Washington, DC 20006-1110
      Tel. 1 202 261 3379
      david.attanasio@dechert.com

      *Attorneys for Plaintiffs Pentacon BV and Baltisse NV*

cc: All Counsel of Record (via ECF)