**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PENTACON BV and BALTISSE NV,

                    Plaintiffs,

          -against-

GUY VANDERHAEGEN, GUY
VANDERHAEGEN REVOCABLE TRUST,
PELICAN INVEST, LLC, PELICAN
INTERNATIONAL, LLC, ORIGIS ENERGY
LLC, formerly Origis Energy NV, and
ORIGIS USA LLC,

                    Defendants.

Case No.: 1:23-cv-02172 (KPF) (VF)

**ORAL ARGUMENT REQUESTED**

**ORIGIS USA LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Blair Connelly
Blake T. Denton
Matthew Valenti
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Defendant Origis USA LLC*

July 28, 2023

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND ..................................................................................................4

    A.    The Founding Of Origis Energy And Its Subsidiary, Origis USA ........................4

    B.    Plaintiffs' Seats On Origis USA's Board Of Directors .............................................6

    C.    Plaintiffs Push To Sell Their Shares In Origis Energy ...........................................7

    D.    Plaintiffs Sign A Share Redemption Agreement To Sell Their Ownership
        Interests In Origis Energy ........................................................................................8

    E.    A Year Later, Antin Acquires A Majority Interest In Origis USA......................11

    F.    Plaintiffs' Original Complaint And Pre-Motion Practice .....................................12

    G.    Plaintiffs' Amended Complaint ............................................................................13

PLEADING STANDARDS...................................................................................................15

ARGUMENT .......................................................................................................................17

    A.    The Amended Complaint Relies On Impermissible Group Pleading That
        Fails To Satisfy Rule 9(b) .....................................................................................17

    B.    The Amended Complaint Fails To State A Fraud Or Fraudulent
        Inducement Claim Against Origis USA (Counts I-II) ..........................................20

        1.    Plaintiffs Fail To Allege Any Misstatement By Origis USA ...................20

        2.    Plaintiffs Cannot Allege Justifiable Reliance ..........................................23

        3.    Plaintiffs Fail Again To Allege Scienter As To Origis USA....................23

    C.    The SRA's Exclusive Remedy Provision Bars The Remaining Claims
        (Counts III, IV, X-XII)..........................................................................................26

    D.    Plaintiffs Fail To Plead Any Aiding And Abetting Claim (Counts III, X)...........28

    E.    Plaintiffs Fail To Plead A Civil Conspiracy Claim (Count IV)............................30

    F.    Plaintiffs Fail To State A Claim For Tortious Interference With Contract
        Against Origis USA (Counts XI and XII).............................................................31

CONCLUSION....................................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACR Sys., Inc. v. Woori Bank*,
  2018 WL 1757019 (S.D.N.Y. Apr. 10, 2018)........................................................................30

*In re ALH Holdings LLC*,
  675 F. Supp. 2d 462 (D. Del. 2009)......................................................................................7

*Alvogen Grp. Holdings LLC v. Bayer Pharma AG*,
  176 A.D.3d 551, 110 N.Y.S.3d 668 (1st Dep't 2019) .........................................................27

*Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.*,
  669 F. Supp. 2d 430 (S.D.N.Y. 2009)...................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................................16

*Atlantic Gypsum Co. v. Lloyds Intern. Corp.*,
  753 F.Supp. 505 (S.D.N.Y. 1990) .........................................................................................25

*Bavaria Intern. Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*,
  2003 WL 21767739 (S.D.N.Y. 2003).....................................................................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................15

*Blue Angel Realty, Inc. v. United States*,
  2022 WL 94599 (S.D.N.Y. Jan. 8, 2022) ..............................................................................6

*Campbell v. Plant Health Intermediate, Inc.*,
  2020 WL 3127809 (S.D.N.Y. June 12, 2020) .......................................................................27

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
  377 F. Supp. 3d 303 (S.D.N.Y. 2019)....................................................................................32

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
  2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022)...........................................................................20

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...................................................................................................25

*Fenner v. News Corp.*,
  2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ..........................................................................24

*Fezzani v. Bear, Stearns & Co.*,
  384 F. Supp. 2d 618 (S.D.N.Y. 2004), *on reconsideration in part*, 2004 WL
  1781148 (S.D.N.Y. Aug. 10, 2004) ................................................................22

*Fezzani v. Bear, Stearns & Co. Inc.*,
  2023 WL 4625544 (S.D.N.Y. July 19, 2023) ....................................................30

*Filler v. Hanvit Bank*,
  156 F. App'x 413 (2d Cir. 2005) ....................................................................16

*Fisk v. Letterman*,
  424 F. Supp. 2d 670 (S.D.N.Y. 2006)...............................................................30

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
  2005 WL 736217 (S.D.N.Y. Mar. 30, 2005), *aff'd*, 159 F. App'x 317 (2d Cir.
  2005) ..........................................................................................................26

*Honig v. Hansen*,
  2022 WL 1239632 (S.D.N.Y. Apr. 27, 2022)....................................................16

*Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA,
  Nat. Ass'n v. DB Structured Prod., Inc.*,
  5 F. Supp. 3d 543 (S.D.N.Y. 2014) ..................................................................27

*Hua Xue v. Jensen*,
  2020 WL 6825676 (S.D.N.Y. Nov. 19, 2020)....................................................31

*I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*,
  1989 WL 31676 (S.D.N.Y. Mar. 30, 1989) .......................................................19

*In Interboro Packaging Corp. v. Capital Plastics Int'l, Inc.*,
  2022 WL 1093597 (S.D.N.Y. Apr. 6, 2022).......................................................21

*INV Accelerator, LLC v. MX Techs., Inc.*,
  2020 WL 882902 (S.D.N.Y. Feb. 24, 2020).......................................................32

*Jalili v. Xanboo Inc.*,
  2011 WL 4336690 (S.D.N.Y. Sept. 15, 2011).....................................................19

*Kolbeck v. LIT Am.*,
  939 F. Supp. 240 (S.D.N.Y. 1996) ...................................................................28

*Koninklijke Philips Elecs. N.V. v. The ADS Grp.*,
  694 F. Supp. 2d 246 (S.D.N.Y. 2010)...............................................................24

*Koulkina v. City of New York*,
  559 F. Supp. 2d 300 (S.D.N.Y. 2008)...............................................................15

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014).........................................................................................28

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011).......................................................................................16

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
  478 F. App'x 679 (2d Cir. 2012) .................................................................................20

*Matsumura v. Benihana Nat. Corp.*,
  542 F. Supp. 2d 245 (2008) ........................................................................................16

*McBride v. KPMG Int'l*,
  135 A.D.3d 576, 24 N.Y.S.3d 257 (1st Dep't 2016) ...................................................30

*In re McDonald's Corp. S'holder Derivative Litig.*,
  291 A.3d 652 (Del. Ch. 2023).......................................................................................7

*Meisel v. Grunberg*,
  651 F. Supp. 2d 98 (S.D.N.Y. 2009)...........................................................................31

*N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*,
  2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013)..............................................................32

*New Enter. Assocs. 14, L.P. v. Rich*,
  2023 WL 3195927 (Del. Ch. May 2, 2023)..................................................................20

*Ningbo Prods. Import & Export Co., Ltd. v. Eliau*,
  2011 WL 5142756 (S.D.N.Y. Oct. 31, 2011)...............................................................17

*Nixon v. Blackwell*,
  626 A.2d 1366 (Del. 1993) .........................................................................................20

*Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l
  Ass'n v. Nomura Credit & Cap., Inc.*,
  30 N.Y.3d 572, 92 N.E.3d 743 (2017)........................................................................27

*Origis USA. Serova v. Teplen*,
  2006 WL 349624 (S.D.N.Y. Feb. 16, 2006).................................................................24

*Ouaknine v. MacFarlane*,
  897 F.2d 75 (2d Cir. 1990)..........................................................................................18

*Pension Comm. of Univ. of Montreal Pension Plan v Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006).........................................................................29

*Regnante v. Sec. & Exch. Offs.*,
  134 F. Supp. 3d 749 (S.D.N.Y. 2015).........................................................................17

*Renner v. Chase Manhattan Bank*,
   2000 WL 781081 (S.D.N.Y. June 15, 2000) ........................................................28

*Rich v. Maidstone Fin., Inc.*,
   2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ...............................................18, 21

*Ritani, LLC v. Aghjayan*,
   970 F. Supp. 2d 232 (S.D.N.Y. 2013)..................................................................28

*Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*,
   121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) ...........29

*Salvador v. Adirondack Park Agency of N.Y.*,
   35 F. App'x 7 (2d Cir. 2002) ...............................................................................16

*Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*,
   2022 WL 3227875 (S.D.N.Y. Aug. 9, 2022).....................................................21, 24

*Sharma v. Skaarup Ship Mgmt. Corp.*,
   699 F. Supp. 440 (S.D.N.Y. 1988), *aff'd*, 916 F.2d 820 (2d Cir. 1990)..................32

*Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.*,
   2021 WL 665031 (S.D.N.Y. Feb. 19, 2021)..........................................................31

*Steed Fin. LDC v. Laser Advisers, Inc.*,
   258 F. Supp. 2d 272 (S.D.N.Y. 2003)...................................................................29

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
   820 F. Supp. 2d 541 (S.D.N.Y. 2011)..................................................................23

*TIC Park Centre 9, LLC v. Wojinar*,
   2017 WL 7733134 (E.D.N.Y. Apr. 7, 2017) ........................................................16

*Trahan v. Lazar*,
   457 F. Supp. 3d 323 (S.D.N.Y. 2020)....................................................................6

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998)...............................................................................................24

*UBS AG, London Branch v. Greka Integrated, Inc.*,
   2020 WL 1957530 (S.D.N.Y. Apr. 23, 2020), *aff'd*, 2022 WL 2297904 (2d
   Cir. June 27, 2022)...............................................................................................22

*UniCredito Italiano SPA v. JPMorgan Chase Bank*,
   288 F. Supp. 2d 485 (S.D.N.Y. 2003)..................................................................23

*Wyche v. Advanced Drainage Sys., Inc.*,
 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir.
 2017) ...................................................................................................................................25

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

Defendant Origis USA LLC ("Origis USA") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint (Ex. 1, cited as "AC ¶ _").[1]

## PRELIMINARY STATEMENT

Origis USA is not, and has never been, a proper party to this lawsuit.

The dispute is among the former owners of Origis Energy NV ("Origis Energy"), a Belgian entity that in turn was the majority owner of Origis USA, a Delaware limited liability company. Plaintiffs allege various claims arising from the transaction in which they sold their Origis Energy shares back to Origis Energy, which resulted in Defendant Pelican International becoming the sole owner of Origis Energy.[2] Plaintiffs initially brought a scattershot complaint against a variety of parties that were somehow involved in the transaction, lumping them together as "Defendants" and asserting various claims against all of them collectively, without specifying which Defendant engaged in the alleged wrongful conduct. Plaintiffs included Origis USA as one of those "Defendants" even though Origis USA was not a buyer or seller of Plaintiffs' shares and did not receive any money, stock, or benefits in the transaction. As a result of their improper "group pleading," Plaintiffs included claims for: an alleged fraud that Origis USA did not commit; breach of contractual provisions to which Origis USA was not a party; and breach of fiduciary duties that Origis USA did not owe Plaintiffs. At the pre-motion conference where Plaintiffs requested a chance to amend their claims, the Court told Plaintiffs that the claims against Origis USA were

---

[1] Unless otherwise indicated, internal citations and quotations are omitted, emphasis is added, and "Ex. __" refers to exhibits attached to the Declaration of Blake T. Denton.

[2] Origis USA incorporates by reference the arguments made in the motion to dismiss filed on behalf of the remaining Defendants, which supplies additional reasons Plaintiffs' claims are deficient and should be dismissed as to all Defendants. *See* Dkt. No. 34. Origis USA makes this submission to address dismissal arguments that apply separately to Origis USA.

"perhaps the weakest part" of their complaint and they should carefully consider who to name as a defendant in their next iteration.

Undeterred, Plaintiffs have now doubled-down in the Amended Complaint, asserting no fewer than *seven* claims against Origis USA, and purporting to implicate Origis USA in every alleged wrongdoing of every other Defendant. But while the number of claims has increased, their substantive merit has not; the Amended Complaint suffers from the same fundamental flaws that plagued the original.

*First*, Plaintiffs continue to rely upon impermissible group pleading that renders the entire pleading defective. The Amended Complaint is based on alleged statements to Plaintiffs "by Vanderhaegen" that would only benefit *him* personally. Yet throughout the Amended Complaint, Plaintiffs repeatedly conflate Origis USA with every other Defendant, including Vanderhaegen. That does not suffice under Rule 9(b) and the claims against Origis USA should be dismissed for that reason alone.

*Second*, Plaintiffs still fail to plead a theory of fraud against Origis USA that makes any sense at all, much less one that meets the heightened particularity requirements for fraud claims. Plaintiffs do not offer any coherent allegations of misstatements, reliance, or scienter as to Origis USA, which was simply an *asset* of which Origis Energy NV was the majority owner. Origis USA made no representations to Plaintiffs during diligence (or at any other time). Nor could Plaintiffs have justifiably relied upon any such representations, as both the contract and the Amended Complaint's allegations make clear that all information was provided by Vanderhaegen's personal entity alone. Indeed, Plaintiffs still offer no sensible theory for *why* Origis USA would be motivated to lie to Plaintiffs in a transaction that occurred entirely at the level of Origis Energy, Origis USA's parent company, and in which Origis USA received absolutely nothing. Despite

having previewed this entire issue in briefing and argument months ago, all that Plaintiffs can now muster in the Amended Complaint is a half-hearted claim that Origis USA's *executives* hoped that after the transaction they would be able to receive higher bonuses without Plaintiffs' interference; but that at most would supply a motive for those *individuals*—not for Origis USA itself, for which such bonuses would only be a *cost*. In any event, Plaintiffs' theory is not supported by any well-pleaded facts.

*Finally*, Plaintiffs have added secondary liability claims that simply underscore the Amended Complaint's weaknesses. The parties' contract provides that Plaintiffs' "sole and exclusive remedy" for any claim other than fraud is an indemnification claim against Origis Energy or Pelican International. Plaintiffs cannot assert duplicative claims against Origis USA that they expressly and knowingly waived. Moreover, even if they could bring such claims, Plaintiffs fail to plead the elements of their "aiding and abetting," "conspiracy," and "tortious interference" claims. All of those claims still suffer from the common defects described above (including the lack of any theory of motive as to Origis USA), and fail to plead additional required elements such as underlying violations, knowledge, and causation.

Origis USA simply does not belong in this case. It was included for the transparent purpose of pressuring Vanderhaegen to settle by threatening to destroy the value of Origis USA for its new owner, Antin Infrastructure Partners, which is not alleged to have done anything wrong. Despite the benefits of prior letter briefing and oral argument that explained these defects, Plaintiffs still cannot make out a valid claim against Origis USA. The claims against Origis USA should be dismissed, with prejudice.

## FACTUAL BACKGROUND

**A.      The Founding Of Origis Energy And Its Subsidiary, Origis USA**

Origis Energy was founded in Belgium in 2008 by Defendant Guy Vanderhaegen, who also served as the company's CEO and President.  AC ¶¶ 6-7, 50.[3]  It was launched as "a solar energy start-up" that would be "at the forefront of the effort to develop climate friendly alternatives to fossil fuels."  AC ¶ 6.

Paul Thiers, Sr., a principal at Plaintiff Pentacon BV ("Pentacon"), is an "entrepreneur and investor" who invested in Origis Energy through Pentacon.  AC ¶ 50.  Vanderhaegen and Thiers each held their ownership interests in Origis Energy through entities they owned and controlled.  Vanderhaegen's stake in Origis Energy was held by Defendant Pelican International, LLC ("Pelican International"), a Delaware limited liability company.  AC ¶ 12 n.1.[4]  Thiers held his stake in Origis Energy through Pentacon.  AC ¶ 50.  Thiers and Vanderhaegen, on behalf of their respective entities, each served on the board of directors of Origis Energy throughout the duration of their investments with it.  AC ¶ 54.

After growing its operations throughout several countries in Europe, in 2012, Origis Energy entered the United States market by forming a wholly-owned subsidiary, Defendant Origis USA, as a Delaware LLC.  AC ¶¶ 7, 46-47, 52.  Origis USA was able to capitalize on the emerging

---

[3] Before co-founding Origis Energy, Vanderhaegen was CFO and COO of a publicly traded company (Associated Weavers International), and for ten years was a management consultant at Arthur Andersen and then Deloitte, where he was a partner and co-founded the firm's Corporate Finance Department.  AC ¶ 8; *see also* Origis Energy, About Us (https://origisenergy.com/guy-vanderhaegen/).

[4] The Amended Complaint alleges that Defendant Pelican Invest, LLC ("Pelican Invest"), a Delaware limited liability company controlled by Vanderhaegen, is the entity through which Vanderhaegen held his position on the Origis Energy board of directors.  AC ¶ 40.  The Amended Complaint also discusses another entity, Defendant Guy Vanderhaegen Revocable Trust, but is not specific about its role or ownership stake in Origis Energy.  AC ¶ 39.

strong demand for solar energy plants throughout the United States.  AC ¶ 53.[5]  Vanderhaegen

served as CEO, President, and director of Origis USA.  AC ¶¶ 7, 11, 56.

       In 2016, Filip Balcaen, a "successful Belgian entrepreneur and investor," bought a stake in

Origis Energy through his venture capital firm, Plaintiff Baltisse NV ("Baltisse").  AC ¶ 8.  Baltisse

touts its "vast [] experience . . . & capital" and "decades of in-house operational, strategic, financial

& legal know-how" in private equity investments.[6]  A Baltisse representative served on Origis

Energy's board of directors, together with Thiers and Vanderhaegen (on behalf of Pelican Invest).

AC ¶ 54.  Following Baltisse's investment, Pentacon, Baltisse, and Pelican International were each

shareholders in Origis Energy, which was at that time the sole owner of Origis USA.  AC ¶¶ 9-12.

       Plaintiffs grew their investments in Origis Energy, ultimately acquiring a collective 72%

of its shares (split roughly evenly between them), with Defendant Pelican International owning the

remaining 28% percent.  Dkt. 30-1 (SRA) at Cover Page.  Origis Energy, in turn, owned 100% of

the membership interests in Origis USA until 2018, when non-party Global Atlantic Re Limited

("Global Atlantic")—a multi-billion dollar company founded by Goldman Sachs—purchased a

20% stake in Origis USA.  AC ¶¶ 10, 52.[7]  Global Atlantic is the unnamed, non-party "minority

shareholder" Plaintiffs refer to throughout the Amended Complaint; Plaintiffs do not allege that

Global Atlantic is affiliated with Pelican or Vanderhaegen in any way.  *E.g.*, AC ¶¶ 21, 22, 48.

       Thus, as of 2018 and up to the time of the transaction described in the Amended Complaint

("the Transaction"), the ownership structure of Origis Energy and Origis USA was as follows:

---

[5] *See also* Origis Energy, Our History, https://origisenergy.com/our-history/.

[6] *See* Baltisse, Private Equity, https://www.baltisse.com/en/private-equity.

[7] *See also* Press Release, Origis Energy, *Origis Energy Announces Strategic Investment from Global Atlantic Financial Group*, (Sep. 24, 2018), https://www.origisenergy.com/wp-content/uploads/2018/09/Origis_Energy_Press_Release-Global-Atlantic-2018-09-24.pdf  (noting "over $70 billion in assets as of June 30, 2018").



## B.   Plaintiffs' Seats On Origis USA's Board Of Directors

Although Plaintiffs claim that they were "deliberately distanced by Vanderhaegen from the business" of Origis USA, they in fact each held a seat on Origis USA's board of directors ("Board"), even though they held no ownership or membership interests in Origis USA.  AC ¶¶ 11, 54; *see also* Ex. 2 (Origis USA LLC Agreement) § 6.02(b).[8]  At the time of the Transaction, the Board was comprised of Thiers, Balcaen, Vanderhaegen, a Global Atlantic representative, and another non-party (Raf C. Decaluwé) who is not referenced in the Amended Complaint.  *Id.*  Thus, Plaintiffs outnumbered Vanderhaegen on the Board two to one.  Plaintiffs do not allege that either Mr. Decaluwé or the Global Atlantic representative were somehow under Vanderhaegen's control. Under the LLC Agreement, the Board could not take action without a majority vote of either the Board or of the membership interests (which were held by Origis Energy and Global Atlantic).

---

[8] The Court may properly consider the Origis USA LLC Agreement because it establishes Origis USA's operations and corporate governance (which Plaintiffs have put squarely at issue in the Amended Complaint), and is thus integral to the Amended Complaint.  *See, e.g.*, *Blue Angel Realty, Inc. v. United States*, 2022 WL 94599, at *1 (S.D.N.Y. Jan. 8, 2022) (Failla, J.) ("On a motion to dismiss, the Court may consider any . . . documents that are 'integral' to the complaint even if they are not incorporated by reference . . . ."); *see also Trahan v. Lazar*, 457 F. Supp. 3d 323, 346 n.3 (S.D.N.Y. 2020) ("The Court considers the LPA and LLC Agreement because they are integral to the Amended Complaint.").

Ex. 2 (Origis USA LLC Agreement) §§ 3.06, 6.05(c), 6.11.  Thus, neither Vanderhaegen nor Plaintiffs had the ability to determine the Board's actions on their own.[9]

### C.  Plaintiffs Push To Sell Their Shares In Origis Energy

Origis Energy's and Origis USA's businesses grew substantially from 2008 to 2019, expanding rapidly across Europe, including operations in Belgium, Greece, and Italy, and adding a major solar plant in Slovakia.  AC ¶ 53.[10]  Within around a year of its incorporation, Origis USA had completed one of the largest solar energy developments in the southeast United States.[11]  By 2018, Origis Energy and Origis USA collectively had a portfolio of at least 100 solar energy projects.[12]  *E.g.*, AC ¶ 10.  By 2019, Origis USA had become "a leading renewable energy developer with a strong development pipeline of solar energy and energy storage projects across the United States."  AC ¶ 53.

Beginning in 2019, Plaintiffs looked to sell their stakes in Origis Energy, due to both their desire to realize their investments and their increasingly divergent views with Vanderhaegen as to the future direction of the business.  *E.g.*, AC ¶ 60 ("Plaintiffs and Defendants began to express a difference of views over how to allocate certain portions of the funds available to the company.").  This was during a period of intense uncertainty in the renewable energy space, given the upcoming

---

[9] Directors of Delaware entities are presumed to be independent and to perform their duties in good faith, absent allegations sufficient to rebut that presumption.  *In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d 652, 685 (Del. Ch. 2023); *In re ALH Holdings LLC*, 675 F. Supp. 2d 462, 477 (D. Del. 2009).  The Amended Complaint contains no such allegations regarding the other two members of the Board.

[10] Origis Energy, Our History, https://origisenergy.com/our-history/.

[11] *Id.*

[12] *Id.*; Press Release at *supra* n.7.

2020 U.S. elections and the divergent fossil fuel policies of then-President Donald Trump and Democratic presidential candidate Joe Biden (and their respective political parties).[13]

To that end, Plaintiffs chose to explore a potential buyout by Vanderhaegen of their interests in Origis Energy, and began negotiating with Vanderhaegen over the terms. *E.g.*, AC ¶¶ 63-68. The negotiations did not contemplate any change of ownership in Origis USA, nor would the proceeds of any sale of Plaintiffs' shares go to Origis USA.

In February 2020, Plaintiffs and Vanderhaegen signed a letter of intent for a buyout, whereby Origis Energy (on behalf of Pelican International) would redeem all of Plaintiffs' shares in Origis Energy. AC ¶ 86. The Transaction would result in Pelican International becoming the sole owner of Origis Energy.[14] Plaintiffs proceeded to conduct diligence and the parties negotiated definitive documents into September 2020—mere weeks before the November 2020 presidential election. AC ¶¶ 86-114. In connection with their diligence, Plaintiffs received considerable information from Vanderhaegen regarding Origis USA's business. *See* AC ¶¶ 60-114.

### D. Plaintiffs Sign A Share Redemption Agreement To Sell Their Ownership Interests In Origis Energy

On September 14, 2020, the parties executed a Share Redemption Agreement ("SRA"), through which Plaintiffs' sale of their Origis Energy shares was consummated. AC ¶ 115; *see* Dkt. No. 30-1 (SRA). The Transaction was structured such that Plaintiffs agreed to sell, and Origis

---

[13] *See, e.g.*, *How Trump And Biden Differ On Energy Policy*, NPR (Oct. 24, 2020), https://www.npr.org/2020/10/24/927487140/how-trump-and-biden-differ-on-energy-policy ("Democratic candidate Biden pledged to move away from oil in favor of renewable energy and predicted that that kind of move would generate millions of jobs. President Trump, by contrast, says that doing that would be costly and hurt the economy.").

[14] Origis USA's COO/CIO—referenced throughout the Amended Complaint (*e.g.*, AC ¶¶ 47-48)—also held shares in Origis Energy and redeemed his shares in connection with the SRA, through a separate agreement. Plaintiffs were party to that agreement, which was executed in October 2020.

Energy agreed to "redeem" (or buy back), all of Plaintiffs' shares in Origis Energy.  *See* Dkt. No. 30-1 (SRA); AC ¶¶ 116-17.  The purchase price was a combined total of $105 million.  AC ¶ 133.

The SRA imposed certain additional obligations on Origis Energy, as the Buyer, as well as Pelican International.  Section 4.4 of the SRA—*i.e.*, the "Information Warranty"—"included a representation and warranty" by Pelican International that "Buyer has made available to each Seller [certain] documents and information" and that "such information provided" was materially complete and not materially false or misleading.[15]  AC ¶ 119; Dkt. No. 30-1 (SRA) § 4.4.  Section 5.5 imposed certain restrictions on Pelican International's sale of its Origis Energy equity for a limited period following the closing of the SRA, as well as certain procedures and remedies in the event of any breach of that provision.  AC ¶¶ 122-24, 213-14; Dkt. No. 30-1 (SRA) § 5.5(a) ("From and after the Second Closing Date until twelve (12) months after the date of this Agreement, Pelican shall not permit any Origis Sale to occur."), § 5.5(b)-(c).

As stated on the SRA's cover page, Origis USA was not a party to the provisions discussed above; it was only a party to specifically identified subsections of Article 2.  *See* Dkt. No. 30-1 (SRA) at Cover Page (stating that Origis USA is a party "solely for purposes of Section 2.1(c), Section 2.1(d), Section 2.1(f) and Section 2.4").  Sections 2.1(c), (d), and (f) relate to Origis Energy financing its buyout of the Plaintiffs' shares through a dividend it would receive from Origis USA on the date of the SRA.  *Id.* at § 2.1(c), (d), (f).  Origis USA thus covenanted to pay that dividend to Origis Energy (§ 2(c)), and to submit joint written instructions with Origis Energy to an escrow agent to disburse the first and second closing payment (§§ 2(d) and (f)).  Section 2.4, relatedly,

---

[15] According to the Amended Complaint, Section 4.4 was added because "Plaintiffs insisted that his [Vanderhaegen's] full disclosure obligation also be memorialized in the contract."  AC ¶ 88. Sections 6.2(a) and 6.4(a) of the SRA include a covenant providing that information subject to Section 4.4 remained true as of the dates of the First Closing and Second Closing.  *See also* AC ¶ 121.  Origis USA is not a party to those provisions.

required Origis USA to enter into the escrow agreement and adhere to its terms. *Id.* at § 2.4. Plaintiffs do not allege that Origis USA breached the provisions to which it was a party.

The SRA also contains an "Exclusive Remedies" provision stating that after the Transaction closes, "the remedies in this ARTICLE VIII will be the sole and exclusive remedy for any and all claims relating . . . [to] this Agreement," "except for claims based on Fraud." *Id.* § 8.6(a). After closing, Plaintiffs' sole remedy is indemnification under Article VIII against Origis Energy or Pelican International. *Id.* § 8.3. "[E]ach Party [] waives and relinquishes all other rights, claims and causes of action . . . whether based on Contract, tort, . . . or otherwise." *Id.* § 8.6(a). Thus, aside from a "Fraud" claim,[16] the SRA extinguishes any remedy against Origis USA upon closing.

Upon the closing of the Transaction, Plaintiffs retained no ownership in Origis Energy, and Pelican International owned 100% of the shares of Origis Energy.[17] The new ownership structure of Origis Energy immediately following the Transaction was as follows:



---

[16] The SRA defines "Fraud" as "an intentional and knowing misrepresentation of a material fact with intent to deceive that constitutes common law fraud under applicable Laws." Dkt. No. 30-1 (SRA) at page 4. It therefore does not encompass any theory of fraud by omission.

[17] As noted (*supra* n.14), this includes shares held by Origis USA's COO/CIO that were redeemed in connection with the SRA.

The corporate and ownership structure of the subsidiary entity, Origis USA, was entirely unaffected by the Transaction.  Origis USA remained wholly owned by Origis Energy and Global Atlantic before the Transaction, as well as after, in exactly the same proportions:



### E.    A Year Later, Antin Acquires A Majority Interest In Origis USA

In November 2020, Democratic candidate Joe Biden won the presidency on a platform that included policy proposals focused on expanding the solar energy industry.[18]  Valuations for solar energy companies soared in anticipation of the new president and the Democratically-controlled House of Representatives advancing renewable energy policies, "triggering a 'green wave' of investment that [drew] comparisons to the blistering rally in technology stocks."[19]

According to the Amended Complaint, in the summer of 2021, Origis Energy retained investment bankers to explore a potential sale of Origis USA.  AC ¶ 148.  After a five-month process, Antin Infrastructure Partners ("Antin") was the winning bidder and, in October 2021, Antin publicly announced its intent to purchase a majority interest in Origis USA.  AC ¶¶ 148-52.

---

[18] *See, e.g.*, Ivan Penn, *From 4% to 45%:  Energy Department Lays Out Ambitious Blueprint for Solar Power*, NYTIMES (Sep. 8, 2021), https://www.nytimes.com/2021/09/08/business/energy-environment/biden-solar-energy-climate-change.html.

[19] *See*, Ritvik Carvalho, *'Blue Wave' U.S. Election Expectations Trigger Green Stocks Frenzy*, REUTERS (Oct. 13, 2020), https://www.reuters.com/article/stocks-renewables-graphic-idUSKBN26Y2EU.

The parties executed a Membership Interest Purchase Agreement whereby an Antin affiliate purchased Pelican International's and Global Atlantic's interests in Origis USA.[20]  *Id.*

### F.    Plaintiffs' Original Complaint And Pre-Motion Practice

Plaintiffs filed their first complaint (the "Original Complaint") on February 14, 2023, alleging that Vanderhaegen defrauded them into selling their stake in Origis Energy for $105 million.  *See* Dkt. 1-1.  Despite that, the Original Complaint named six defendants, including Origis USA.  The Original Complaint supplied no basis to attribute any alleged misconduct—let alone fraud—to Origis USA.  Plaintiffs nevertheless asserted all six alleged causes of action against all six defendants: three fraud-based claims; one claim for breach of fiduciary duty; and two claims for breach of the SRA.  *Id.* at ¶¶ 125-166.

On April 27, 2023, pursuant to this Court's individual rules, Origis USA sought permission to move to dismiss the Original Complaint.  Dkt. No. 19.  It explained that the Original Complaint engaged in impermissible group pleading, and did not specify any cognizable basis for the claims against Origis USA.  *Id.*  Origis USA was not even a party to the contractual provisions Plaintiffs alleged were breached, and owed no fiduciary duties to Plaintiffs under settled law.  Moreover, Plaintiffs' fraud-based claims against Origis USA were deficient because, among other things, Plaintiffs failed to plead *any* misstatements or scienter (or even theory of motive) as to Origis USA. At the May 19, 2023 pre-motion conference, Plaintiffs stated that they wished to amend the Original Complaint in light of the Defendants' proposed motions to dismiss.  The Court observed that Plaintiffs' claims against Origis USA were "perhaps the weakest part" of their complaint and

---

[20] As part of the Transaction, Pelican International "rolled over" the majority of its Origis USA equity into an Antin affiliate.

noted: "I am sure that [Plaintiffs' counsel] will think and think and think some more before deciding finally on who makes it into the next amended complaint." Ex. 3 (Hearing Tr.) 23:7-14.

### G.  Plaintiffs' Amended Complaint

Plaintiffs filed the Amended Complaint on June 12, 2023.  Rather than limit their lawsuit to the parties who actually acquired Plaintiffs' interests, Plaintiffs asserted even *more* claims against Origis USA.  The Amended Complaint replaces the meritless breach of contract and fiduciary duty claims from the Original Complaint with two claims for "tortious interference" with contract (Counts XI and XII) and an "aiding and abetting" breach of fiduciary duty claim (Count X).  Plaintiffs kept in place the fraud-based claims (Counts I-II), but similarly added a new claim for "aiding and abetting" fraud (Count III).  Plaintiffs further added a "civil conspiracy" claim (Count IV) that purports to incorporate all of their primary causes of action (fraud, breach of fiduciary duty, and tortious interference).  *See* AC ¶¶ 161-87, 225-52.

While Plaintiffs stated that their next pleading would "clarify some of the[ir] claims" against Origis USA (Ex. 3 (Hearing Tr.) 5:7-12), the Amended Complaint is still fundamentally about Vanderhaegen's acquisition of Plaintiffs' interests in *Origis Energy*.  Like its predecessor, the Amended Complaint focuses on alleged acts by Vanderhaegen—the alleged beneficiary of the Transaction—without any particularized allegations implicating Origis USA.  For example, Plaintiffs allege:

- "He [***Vanderhaegen***] intentionally ***restricted***, omitted, and misrepresented company information to achieve his goal of control."  AC ¶ 59.

- "***Vanderhaegen decided*** to try to remove Plaintiffs from the picture, [and] gain total control of the company."  AC ¶ 63.

- "***Vanderhaegen*** . . . ***intended*** to prey on Plaintiffs . . . to convince them to sell their interest in Origis USA for an unconscionably low price."  AC ¶ 65.

- "***Vanderhaegen*** and Origis USA's minority shareholder [Global Atlantic] ***acted*** on Plaintiffs' vulnerability by seeking to pocket for themselves the overwhelming value of Plaintiffs' holdings."  AC ¶ 66.

- "***Vanderhaegen told Plaintiffs*** that Origis USA was worth only about $160 million."  AC ¶ 67.

- "***Vanderhaegen***, using his control over Origis USA's information, ***reassured Plaintiffs*** that the price he was offering was actually generous."  AC ¶ 68.

- "As the negotiations went forward, ***Vanderhaegen continued to provide false and misleading information*** that he claimed supported his fraudulently low valuation."  AC ¶ 83.

- "During March 2020 and April 2020, ***Vanderhaegen continued*** to spin and expand upon ***his previous deliberate material falsehoods and omissions***."  AC ¶ 93.

- The Transaction "***made Vanderhaegen***, in particular, as ***rich*** as Croesus."  AC ¶ 153.

The Amended Complaint does not allege—let alone with particularity—any representations that Origis USA itself made to Plaintiffs.  To the contrary, Plaintiffs admit that they "received only the information ***that Vanderhaegen wanted them to see***" and that "***Vanderhaegen exercised effective control*** over the detail and flow of information to Plaintiffs about Origis USA's business."  AC ¶¶ 57, 61.

As for Origis USA's involvement, all Plaintiffs allege is that its employees prepared data relating to the value of their company, some of which made its way into the mix of information that Vanderhaegen provided to Plaintiffs under the SRA, and some of which did not.  *See* AC ¶ 47; *see also* AC ¶ 90 ("Vanderhaegen emailed Plaintiffs an updated pipeline report on March 2, 2020 prepared by Origis USA").  At best, the Amended Complaint claims that the data reflected a range of valuations for the company.  Nowhere do Plaintiffs plead with particularity that Origis USA knowingly prepared false data to assist in an alleged fraud from which it received no benefit.  Tellingly, the Amended Complaint does not attach a single one of the documents allegedly coming from Origis USA.  Nor does it allege that Origis USA had any duty to proactively disclose all of

14

its internal valuation analyses to Plaintiffs (who were not even direct owners of Origis USA)—particularly when the SRA contained carefully negotiated representations and warranties expressly obligating Pelican International alone.  Dkt. No. 30-1 (SRA) Art. IV.

The Amended Complaint finally attempts to articulate a theory of motive for Origis USA to engage in fraud.  Conceding that Origis USA received no direct financial (or other) benefit from the Transaction, Plaintiffs contend that Origis USA was incentivized to remove Plaintiffs as investors in the parent company—Origis Energy—because that would somehow enable Origis USA to pay its employees higher bonuses.[21]  AC ¶¶ 48, 162 ("[I]n the case of the Origis USA Defendant, [its motive was] to enrich its senior management and its minority shareholder, to free its senior management from any interference by Plaintiffs, and to facilitate the awarding of large bonuses to the senior management.").  Nowhere does the Amended Complaint explain how Origis USA—as opposed to its senior management—benefited from this newly alleged practice of paying out large bonuses—which, even if true, would constitute an additional *expense* for Origis USA.

## PLEADING STANDARDS

A complaint must allege a "plausible" factual basis supporting the claims asserted.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  To present a plausible claim, the "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Id.* at 555.  Rather, it must allege "factual content that allows

---

[21] The Amended Complaint also recasts the Transaction as "in material reality, [] a buyout by Origis USA, . . . for the benefit of Origis USA."  AC ¶ 116.  Plaintiffs' conclusory assertion is directly contradicted by the Transaction documents, which provide that it is a buyout of Plaintiffs' interests in Origis Energy conducted by that entity, and the realities of the corporate structure.  Dkt. No. 30-1 (SRA) at page 1.  The Court is not required to credit conclusory assertions that are directly contradicted by the operative documents.  *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008) ("Plaintiff's conclusory allegations . . . are contradicted by the documents attached to the Complaint, and are therefore insufficient to defeat the motion to dismiss.").

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Salvador v. Adirondack Park Agency of N.Y.*, 35 F. App'x 7, 11 (2d Cir. 2002) (noting that courts cannot accept "unsupported conclusions [or] unwarranted inferences . . . cast in the form of factual allegations"). Determining whether a complaint states a plausible claim for relief is "a context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Further, because all of Plaintiffs' claims are based on the same alleged fraudulent scheme, each must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251-52 (2008) ("These heightened pleading requirements are applicable to any claim that 'sounds in fraud,' regardless of whether fraud is an element of the claim."); *see also Filler v. Hanvit Bank*, 156 F. App'x 413, 417 (2d Cir. 2005) ("[T]he particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims."); *Honig v. Hansen*, 2022 WL 1239632, at *3 (S.D.N.Y. Apr. 27, 2022) ("Because all of Plaintiffs' claims sound in fraud, including the tortious interference of contract claim, they are subject to Rule 9(b)'s heightened pleading standard."); *TIC Park Centre 9, LLC v. Wojinar*, 2017 WL 7733134, at *6 (E.D.N.Y. Apr. 7, 2017) (dismissing aiding and abetting breach of fiduciary duty claim because "Rule 9(b) appl[ies] to torts that are premised on the defendant's alleged fraudulent actions").

Rule 9(b) requires Plaintiffs, among other things, to "state with particularity the circumstances constituting fraud or mistake" and when making claims against multiple defendants "plead with particularity by setting forth *separately* the acts complained of *by each defendant*."

*Ningbo Prods. Import & Export Co., Ltd. v. Eliau*, 2011 WL 5142756 at *7 (S.D.N.Y. Oct. 31, 2011) (emphasis in original).  As discussed below, Plaintiffs fall well short.

## ARGUMENT

The Amended Complaint fails to state a claim and should be dismissed against Origis USA. *First*, the entire Amended Complaint is defective because it once again relies throughout on impermissible group pleading.  *Second*, Plaintiffs' fraud claims fail because they still do not identify a single alleged misstatement or omission *by Origis USA*, or that Plaintiffs reasonably relied on any such statement.  Also, Plaintiffs still do not and cannot identify any benefit to Origis USA from the Transaction—and thus cannot plead any cogent theory of scienter or motive for Origis USA.  *Third*, all of the remaining claims are foreclosed by the SRA's exclusive remedy provision.  *Fourth*, those additional claims fail regardless.  The aiding and abetting and civil conspiracy claims include no particularized allegations that Origis USA agreed to assist (or knew it was assisting) an alleged fraud or breach of duty, or otherwise caused Plaintiffs' losses; and the tortious interference with contract claims fail because Plaintiffs do not plead "intentional procurement" of a breach or causation as to Origis USA.

### A.   The Amended Complaint Relies On Impermissible Group Pleading That Fails To Satisfy Rule 9(b)

As this Court has acknowledged, "[a] complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)."  *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 771 (S.D.N.Y. 2015) (Failla, J.).  The Amended Complaint repeatedly violates this rule.

Like the first one, the Amended Complaint is replete with misleading and impermissibly vague references to all six "Defendants" generally—without separately delineating if or how Origis USA is allegedly implicated.  *E.g.*, AC ¶ 23 ("***Defendants*** fraudulently induced Pentacon

and Baltisse to enter into the SRA . . . ."); AC ¶ 72 ("*Defendants* deliberately gave Plaintiffs information . . . ."); AC ¶ 74 ("*Defendants* repeatedly and falsely represented . . . .").

Worse, Plaintiffs do this even when the allegations could not possibly apply to Origis USA. For example, the Amended Complaint repeatedly refers to what "*Defendants* represented and warranted in the SRA" and "*Defendants'* fiduciary duties to Plaintiffs." AC ¶¶ 25-26; *see also* AC ¶¶ 108, 144. Plaintiffs know that Origis USA made no such representations under the SRA, and owed no such duties to Plaintiffs—that is why Plaintiffs dropped those claims against Origis USA in the Amended Complaint. Courts routinely dismiss complaints that improperly group defendants together in this manner. *See Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *8 n.7 (S.D.N.Y. Dec. 20, 2002) (applying "[t]he prohibition against the use of 'Defendants' to group all Defendants together" and dismissing fraud claims on that basis).

Plaintiffs add another layer of ambiguity when discussing Vanderhaegen. He held multiple roles at multiple Defendant-entities, including Origis USA, and he is also named individually as a Defendant. AC ¶ 38. Further, Vanderhaegen (through entities *other* than Origis USA) is alleged to have been the one who personally benefited from the Transaction. AC ¶ 41. Yet, the Amended Complaint states that "[w]henever this Complaint refers to Vanderhaegen, that reference is to Vanderhaegen acting in his capacity as CEO, President, and board director of Origis USA in addition to Vanderhaegen acting in his capacity as a Vanderhaegen Defendant" (which itself includes numerous entities). AC ¶ 49. In other words, each of the *hundreds* of times the Amended Complaint mentions Vanderhaegen, that purportedly refers to him acting in every capacity he held, all at the same time. Rule 9(b) does not allow Plaintiffs to state a claim against Origis USA by intentionally conflating Vanderhaegen's roles at each of the Defendant-entities. *See Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990) (holding that an allegation that one defendant was an

18

"affiliate" of another was "insufficient to link [the affiliate] to the misrepresentations"); *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 1989 WL 31676 (S.D.N.Y. Mar. 30, 1989) (identifying defendants on basis of corporate affiliation does not sufficiently connect them to allegedly fraudulent statements).

Plaintiffs also consistently blur the lines between different corporate entities and ignore the distinctions between the entity, its shareholders, and its employees. For example, the Amended Complaint defines Origis USA to include its parent company, which is a distinct corporate entity, and vaguely refers to the Defendants being "close corporations." *E.g.*, AC ¶ 6 ("'Origis Energy,' and together with Origis USA, 'Origis'"); AC ¶ 7 ("The Origis entities were close corporations . . . ."); AC ¶ 47 (same); AC ¶ 48 ("Origis USA acted at all relevant times and continues to act with the Vanderhaegen Defendants as one combined, unified entity . . . ."). There is no basis in the Amended Complaint for disregarding Origis USA's status as a separate legal entity and conflating it with any other Defendant. Indeed, at the pre-motion conference, in response to the Court's concerns, Plaintiffs stated they would "attempt . . . to flesh out the alter-ego point." Ex. 3 (Hearing Tr.) 5:12-14. They did not do so. The Amended Complaint does not contain any reference to "alter ego" and fails to plead any of the elements required to rely on such an argument. Nor could it, given that (among other things) Plaintiffs had twice as many representatives on Origis USA's Board as Vanderhaegen. *See Jalili v. Xanboo Inc.*, 2011 WL 4336690, at *3 (S.D.N.Y. Sept. 15, 2011) ("To overcome the presumption of [corporate] separateness," a plaintiff "must come forward with the showing of actual domination required to pierce the corporate veil.").

Further, the Amended Complaint's references to Defendants as "close corporations" are both legally and factually wrong. First, Origis USA is not a corporation at all; it is a Delaware LLC. AC ¶ 46. Regardless, the concept of "close corporations" does not alter or enhance duties

or the concept of corporate separateness under Delaware law.[22]  *Cf. New Enter. Assocs. 14, L.P. v. Rich*, 2023 WL 3195927, at \*25 (Del. Ch. May 2, 2023) ("A close corporation under Subchapter XIV is not synonymous with a 'closely held corporation.'  The former is a specific type of corporation contemplated by the DGCL, like a non-stock corporation or a public benefit corporation.  The latter is a colloquialism for a privately held corporation with relatively few stockholders."); *Nixon v. Blackwell*, 626 A.2d 1366, 1380 (Del. 1993) (There is "[not] any special relief for the minority stockholders in this closely-held, but not statutory 'close corporation.'").

### B.   The Amended Complaint Fails To State A Fraud Or Fraudulent Inducement Claim Against Origis USA (Counts I-II)

Plaintiffs purport to bring claims against Origis USA for fraud and fraudulent inducement, which require: (1) a material misrepresentation of fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages.  *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012); *Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (fraudulent inducement).  Plaintiffs fail to plead several of these elements.

#### 1.   Plaintiffs Fail To Allege Any Misstatement By Origis USA

Plaintiffs do not and cannot allege any misstatement by Origis USA.  To plead a misstatement under Rule 9(b), Plaintiffs must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

---

[22] Plaintiffs argued in their pre-motion response letter (Dkt. No. 20 at 3) that the SRA's New York choice of law provision governs all of their claims—even those relating to Defendants' corporate structures and fiduciary duties owed thereunder.  That is wrong; the laws of Origis USA's place of organization (Delaware) govern its internal affairs regardless of any contractual choice of law. *See, e.g.*, *Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at \*9 (S.D.N.Y. Aug. 3, 2022) (rejecting contractual choice of law because "New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims").

made, and (4) explain why the statements were fraudulent." *In Interboro Packaging Corp. v. Capital Plastics Int'l, Inc.*, 2022 WL 1093597, at *2 (S.D.N.Y. Apr. 6, 2022). When impermissibly group-pleading their claims, Plaintiffs allege generally that "Defendants" collectively made a laundry list of misrepresentations to them, *e.g.*, AC ¶ 163, but tellingly say nothing about representations by Origis USA specifically. *Rich*, 2002 WL 31867724, at *8, *13 (dismissing fraud claim where, even after amending, still "the Plaintiff's Amended Complaint does little to explain what *acts*, if any, make [the defendant] a 'participant' in the alleged fraudulent scheme") (emphasis in original).

Indeed, the pled misrepresentations make no sense as to Origis USA. For example, Origis USA could not have misrepresented that it "had no intention of selling the business in the foreseeable future" as it did not own its own stock, nor could Origis USA misrepresent that it "wanted to remain invested over the long haul" in itself. AC ¶ 163. All of the alleged "misstatements" were made by the purchasers in the Transaction (through Vanderhaegen), and Origis USA was not one of them. *See Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, 2022 WL 3227875, at *10-11 (S.D.N.Y. Aug. 9, 2022) (Failla, J.) (dismissing fraudulent inducement claim where "Plaintiff does not support her allegation by pointing to any specific statements made by [the] Defendant[]").

Plaintiffs' theory, instead, is that some financial information generated by Origis USA employees ultimately made its way to the Plaintiffs. *Supra* pages 14-15. But the SRA is clear that Origis USA did not provide that information to Plaintiffs or make representations about it to them. Origis USA was expressly not a party to Article IV of the SRA, which outlines "Pelican's [] represent[ations] and warrant[ies] to the Sellers" and describes the documents and information which "Buyer"—which is defined as Origis Energy and *not* Origis USA—"has made available to

each Seller." Dkt. 30-1 (SRA) § 4.4.  These included "(a) the business, financial condition, assets, liabilities and results of operations of the Company and its Subsidiaries, (b) the Company's development pipeline of solar power and energy storage projects and (c) any value indications by any party showing an interest to acquire" Origis Energy or its assets.  *Id.*  Moreover, Pelican International certified "that such materials are: (i) complete in all material respects and (ii) do not contain any untrue statement of a material fact or fail to state a material fact necessary to make the statements contained therein, not misleading . . . ." *Id.*  The contract is clear who made the financial representations to Plaintiffs, and it was not Origis USA.  This alone warrants dismissal.  *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 640 (S.D.N.Y. 2004), *on reconsideration in part*, 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004) ("The [] Defendants cannot be held liable for misrepresentations that they did not make.").

Absent an affirmative misrepresentation by Origis USA to Plaintiffs (there is none), Plaintiffs are left to rely on an omission theory—namely that "Defendants . . . concealed and failed to disclose material facts," such as that they had "consulted with investment bankers to advise on selling Origis USA" who "provided valuations to the Defendants." AC ¶ 164.[23]  Here, there was no contractual or other duty for Origis USA to speak up for Plaintiffs' benefit.  *See UBS AG, London Branch v. Greka Integrated, Inc.*, 2020 WL 1957530, at *6–7 (S.D.N.Y. Apr. 23, 2020), *aff'd*, 2022 WL 2297904 (2d Cir. June 27, 2022) (finding there was no duty to speak where the defendant made no partial statement requiring correction/supplementation, the parties had no fiduciary or confidential relationship with each other, and no facts "peculiarly within the knowledge of the defendant").  Origis USA had no disclosure duties to Plaintiffs under the SRA

---

[23] This omission theory is also barred by the SRA's exclusive remedy provision, because it is not premised on an alleged "misrepresentation" with "intent to deceive."  *See supra* n.16.

or otherwise (*supra* pages 9-10); nor is Origis USA alleged to have made any "partial" statements to Plaintiffs—and indeed Plaintiffs admit that "Vanderhaegen exercised effective control over the detail and flow of information to Plaintiffs about Origis USA's business."  AC ¶ 57.

### 2.    Plaintiffs Cannot Allege Justifiable Reliance

Plaintiffs also had no reasonable basis for relying on any purported statements by Origis USA—which is a necessary element of their fraud claims.  Plaintiffs are sophisticated parties who knew how to bind Origis USA to representations and warranties, if that was their goal.  *See Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 (S.D.N.Y. 2011) ("To determine, on a motion to dismiss, whether a plaintiff has alleged reasonable reliance, a court may 'consider the entire context of the transaction, including . . . the sophistication of the parties, and the content of any agreements between them.'") (dismissing fraud claim for failure to plead reasonable reliance).  Instead, Plaintiffs did the opposite.  They contracted in the SRA only for Pelican International to supply certain financial information about Origis Energy to Plaintiffs and to certify to the accuracy of such information.  *Supra* pages 9-10.  Having made that agreement, Plaintiffs cannot now claim that they relied—let alone reasonably relied—on financial representations by Origis USA.  *E.g.*, *UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003) (dismissing fraud claim for lack of reasonable reliance where the defendants "had no duty to disclose information about Enron's financial condition" to plaintiffs and "the disclaimer provisions in those agreements preclude any inference of reasonable reliance").

### 3.    Plaintiffs Fail Again To Allege Scienter As To Origis USA

Plaintiffs' inability to assert any particularized misstatements by Origis USA is unsurprising because the alleged fraud makes no sense as applied to Origis USA.  The Transaction at issue relates solely to the sale of *Origis Energy* stock between *Origis Energy stockholders*.  *Supra* pages 8-11.  Despite amending, Plaintiffs still articulate no logical motive for Origis USA

to commit fraud in a transaction that occurred among entities *above* Origis USA, and where Origis USA received no benefit. *Scalercio-Isenberg*, 2022 WL 3227875 *11 (dismissing fraud claim where "Plaintiff never explains how [Defendant] concretely benefitted"). Thus, Plaintiffs do not and cannot plead that Origis USA acted with "a strong inference of fraudulent intent," which is an independent basis for dismissal of their fraud claims. *Id.* at *9-11.

Plaintiffs continue to ignore that Origis USA is a separate legal entity that is distinct from its owners and its employees, and that New York (and Delaware) courts respect the corporate form. *See Koninklijke Philips Elecs. N.V. v. The ADS Grp.*, 694 F. Supp. 2d 246, 251 (S.D.N.Y. 2010) ("As a rule, the corporate form is accorded great respect and is set aside only when necessary to avoid a manifestly inequitable result."). This elementary point undermines Plaintiffs' entire theory of motive against Origis USA. Although Plaintiffs argue that Vanderhaegen and his entities benefited from buying Plaintiffs' shares at a low price, they offer no basis for how any of that benefited *Origis USA*. *Serova v. Teplen*, 2006 WL 349624, at *7 (S.D.N.Y. Feb. 16, 2006) (dismissing fraud claim where "[the plaintiff] fails to allege what benefits [the defendants] would gain" from the alleged fraudulent conduct).[24] Plaintiffs offer no particularized allegations that Vanderhaegen was acting in the interests of Origis USA when negotiating with Origis Energy stockholders to purchase their Origis Energy stock. Plaintiffs acknowledge as much in the

---

[24] The mere fact that Vanderhaegen worked at Origis USA does not change that. A person can wear multiple "hats" and his conduct in one role is not thereby imputed to all other entities where he worked. *See, e.g.*, *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998) (stating the "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"); *Fenner v. News Corp.*, 2013 WL 6244156 at *11 (S.D.N.Y. Dec. 2, 2013) (when directors and officers change hats, "[t]he presumption is that corporate personalities remain distinct"); *Bavaria Intern. Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, 2003 WL 21767739 at *3 (S.D.N.Y. 2003) (dismissing fraud claim against parent company where officer wore multiple hats and his actions were allegedly undertaken to further the subsidiary's interests).

Amended Complaint, admitting that "**Vanderhaegen** proposed to buy out Plaintiffs' interest in Origis USA," AC ¶ 80, and that "**Vanderhaegen knew** that if **he could acquire** Plaintiffs' interests at the price contemplated in the SRA, they could be resold quickly at a massive profit," AC ¶ 107.

When pleading the fraud claims, all the Amended Complaint can muster about Origis USA's alleged motive is that it sought "to enrich **its senior management and its minority shareholder**, to free **its senior management** from interference by Plaintiffs, and to facilitate the awarding of large bonuses to **its senior management**." AC ¶¶ 162, 169. But these expressly are *not* benefits to Origis USA, but rather to non-defendants "senior management" and "minority shareholder." Indeed, these are *costs to* Origis USA and cannot be said to benefit the entity in any way. *See Atlantic Gypsum Co. v. Lloyds Intern. Corp.*, 753 F.Supp. 505, 514 (S.D.N.Y. 1990) ("Plaintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent."). Nor would "large bonuses" even suffice as a an alleged motive *for the officers themselves*. Courts routinely reject these exact allegations. *E.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated."); *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *12 (S.D.N.Y. Mar. 10, 2017) (Failla, J.) ("Plaintiff's second motive theory is that the Individual Defendants were motivated to . . . procure [higher] bonuses . . . [b]ut again, this is a general motive that any corporate officer would have, and insufficient as a matter of law."), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).

Moreover, Plaintiffs' newly-articulated motive theory does not withstand scrutiny. There are no particularized allegations that Plaintiffs ever threatened—or even had the authority—to direct Origis USA's compensation decisions. Plaintiffs held no membership interests in Origis USA, and only a minority of the seats (two of five) on its Board. *Supra* pages 6-7. As a result,

they did not possess the majority needed to make decisions for Origis USA, and the Origis USA LLC Agreement gives Plaintiffs no special rights over employee compensation. Nor do Plaintiffs articulate any theory as to why Origis USA's other directors (the Global Atlantic appointee and Mr. Decaluwé)—who are not alleged to be controlled by Vanderhaegen—would want to award outsized bonuses to Origis USA's employees. Plaintiffs' theory that Origis USA committed fraud in order to prevent Plaintiffs' interference with their business is thus speculative, illogical, unsupported by any particularized facts, and fails to satisfy Rule 9. *See Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, 2005 WL 736217, at *3 (S.D.N.Y. Mar. 30, 2005) ("As a matter of law, such allegations of irrational motive cannot support a fraud claim under Rule 9(b)."), *aff'd*, 159 F. App'x 317 (2d Cir. 2005).[25]

### C.   The SRA's Exclusive Remedy Provision Bars The Remaining Claims (Counts III, IV, X-XII)

None of the remaining claims against Origis USA—for aiding and abetting, conspiracy, and tortious interference—are based on any alleged affirmative misrepresentation by Origis USA. *See* AC ¶¶ 175-87, ¶¶ 225-52. Rather, they are secondary liability claims asserting only that Origis USA assisted or abetted another Defendant's alleged misstatements. *Infra* pages 28-33. The SRA bars these claims. Under the SRA's exclusive remedy provision, Plaintiffs "relinquishe[d]" claims against Origis USA that are not based on alleged "Fraud"—*i.e.*, an "intentional and knowing misrepresentation" by Origis USA. Plaintiffs are instead limited to indemnity against the Buyers

---

[25] Although Plaintiffs do not name him as a Defendant, the Amended Complaint alleges that Origis USA's CIO/COO participated in the alleged fraud by providing Plaintiffs with depressed valuation statistics. *E.g.*, AC ¶ 47. Plaintiffs' allegation is strange, because (as Plaintiffs are well aware having participated in the Transaction), that officer redeemed his own Origis Energy shares in the same Transaction as Plaintiffs, and received the same price per share.

under the SRA—which does not include Origis USA.   Dkt. No. 30-1 (SRA) § 8.6(a); *supra* page 10.

New York courts enforce precisely these types of exclusive remedy provisions.   *See, e.g.*, *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 553 (S.D.N.Y. 2014) ("Contracting parties are generally free to limit their remedies, and courts applying New York law routinely enforce such limitations according to their terms.").   One analogous example is *Campbell v. Plant Health Intermediate, Inc.*, 2020 WL 3127809 (S.D.N.Y. June 12, 2020).   Like here, the *Campbell* case involved an alleged fraud in connection with an equity purchase agreement.  *Id.* at *1-2, 4, 6-7. The agreement contained a nearly identical exclusive remedy provision to the SRA.  *Id.* at *7-8 (providing that indemnification was "sole and exclusive remedy" for all claims "relating to the subject matter of this Agreement," except for fraud).   The court dismissed the counter-plaintiff's claims because they were "covered by express contract provisions in the Equity Purchase Agreement."  *Id.* at *8; *Alvogen Grp. Holdings LLC v. Bayer Pharma AG*, 176 A.D.3d 551, 551, 110 N.Y.S.3d 668, 669 (1st Dep't 2019) (affirming dismissal of claim where the "[purchase agreement] states that, except in cases of fraud . . . which plaintiffs do not allege—the indemnification provisions of this Article 9 shall be [plaintiffs'] sole and exclusive remedy . . . for all matters arising under or in connection with this Agreement and the Transaction Documents").

Plaintiffs are sophisticated parties who chose to release all claims against Origis USA that are not based on an alleged intentional misrepresentation by Origis USA.  The aiding and abetting, conspiracy, and tortious interference claims allege no intentional misrepresentations *by Origis USA* and therefore must be dismissed.  *E.g.*, *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 584, 92 N.E.3d

743, 750 (2017) ("honoring 'the exclusive remedy that the[se] [sophisticated] parties fashioned'"

and dismissing claim) (alteration in original).  As set forth below, those claims fail regardless.

### D.      Plaintiffs Fail To Plead Any Aiding And Abetting Claim (Counts III, X)

Apparently recognizing they cannot plead any direct claims against Origis USA, Plaintiffs

seek to assert claims for aiding and abetting fraud and breach of fiduciary duty (Count III, X).

These claims require Plaintiffs to allege: (1) the existence of a violation by the primary party, (2)

knowledge of this violation on the part of the aider and abettor, and (3) substantial assistance by

the aider and abettor in the achievement of the primary violation.  *See Krys v. Pigott*, 749 F.3d

117, 127-28 (2d Cir. 2014); *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 254-55 (S.D.N.Y.

2013).  Thus, for an aiding and abetting claim, in addition to pleading the underlying fraud or

breach of fiduciary duty, Plaintiffs must allege that Origis USA knew of the tort and "substantially

assisted" in it.

*First*, just like the fraud claims, Plaintiffs still offer no rational motive for Origis USA to

support or participate in an alleged fraud or breach of duty for which it received no benefit.  *See*

*supra* pages 23-26; AC ¶¶ 177, 186 (alleging only that Origis USA's motive was to pay its

employees excessive bonuses).  This inability to even plead a cogent motive dooms the entire

Amended Complaint, including the aiding and abetting claims.  *See Renner v. Chase Manhattan*

*Bank*, 2000 WL 781081, at *10 (S.D.N.Y. June 15, 2000) (holding that plaintiff failed to allege

aiding and abetting claim because "Plaintiff must, but has not, allege that [the defendant] stood to

gain something from his participation in the fraud").

*Second*, "actual knowledge is required to impose liability on an aider and abettor under

New York law."  *Kolbeck v. LIT Am.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996).  But the Amended

Complaint contains no particularized allegations that Origis USA was aware of—let alone

knowingly assisted in—any purported fraud or breach.  The only alleged involvement of Origis

USA is that its employees on occasion prepared information about its business, some of which *Vanderhaegen* then provided to Plaintiffs. *Supra* pages 14-15. Plaintiffs do not allege how any particular piece of information from Origis USA was false, but even if it was, there are no particularized allegations that Origis USA (a) knew the information was false, (b) knew of Vanderhaegen's alleged plan to defraud Plaintiffs, or (c) knew it was assisting in the alleged fraud by providing financial information to Vanderhaegen. AC ¶¶ 175-81, 225-31. Plaintiffs' failure to adequately plead any one of those requires dismissal of the aiding and abetting claims. *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003) (dismissing aiding and abetting breach of fiduciary duty claim and aiding and abetting fraud because plaintiff failed to allege specific facts demonstrating defendants' actual knowledge of the fraud).

*Third*, the Amended Complaint does not plead "substantial assistance" as required for an aiding and abetting claim. Substantial assistance "has been construed as a causation concept, requiring that the plaintiff allege that the acts of the aider and abettor proximately caused the harm upon which the primary liability is predicated." *Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 338 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016). "'But-for' causation is insufficient," as are allegations that the primary alleged tortfeasor (rather than the alleged aider/abettor) proximately caused the plaintiffs' harm. *See Pension Comm. of Univ. of Montreal Pension Plan v Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201-02 (S.D.N.Y. 2006). Here, Plaintiffs do not plead that any alleged misstatements by Origis USA proximately caused their purported harm, nor could they given the repeated admissions throughout the Amended Complaint that Plaintiffs were harmed due to their reliance on *Vanderhaegen's representations*. *See supra* pages 13-14; *see also, e.g.,* AC ¶ 14 ("Pentacon and Baltisse continued to trust Vanderhaegen, relying" on his statements); AC ¶ 27 ("Vanderhaegen, to induce Plaintiffs to sell

their interest, also repeatedly told . . . ."); AC ¶ 87 ("Vanderhaegen . . . convince[d] Plaintiffs to rely on the honesty and completeness of his statements"); AC ¶ 143 ("Plaintiffs trusted that Vanderhaegen had been telling the truth").

*Finally*, if this Court finds there is no adequately alleged fraud or breach of fiduciary duty claim against the primary actors, then there can be no "aiding and abetting" claim against Origis USA for the same conduct. *See, e.g.*, *McBride v. KPMG Int'l*, 135 A.D.3d 576, 579, 24 N.Y.S.3d 257, 262 (1st Dep't 2016) ("The [claim] for aiding and abetting fiduciary duty fails because there was no underlying breach of fiduciary duty."). For the reasons stated in the brief of the remaining Defendants (Dkt. No. 34), the Amended Complaint does not sufficiently plead an underlying fraud claim and therefore secondary liability cannot attach to Origis USA.

### E.    Plaintiffs Fail To Plead A Civil Conspiracy Claim (Count IV)

Plaintiffs also add a catch-all "civil conspiracy" claim that purports to hold Origis USA liable for all "violations of law described in this Complaint[.]" AC ¶ 183. To plead a claim for civil conspiracy, Plaintiffs must allege: (1) an agreement to commit the underlying tort (*i.e.*, fraud or breach of duty), (2) an "overt act" in aid of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the acts of the conspiracy caused the plaintiff's injuries. *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006); *ACR Sys., Inc. v. Woori Bank*, 2018 WL 1757019, at *6 (S.D.N.Y. Apr. 10, 2018).

The civil conspiracy claim is based on the exact same theory and allegations as the claims discussed above. *See* AC ¶¶ 183-87 ("Defendants engaged in a civil conspiracy to . . . convince Plaintiffs to sell their ownership interests to Defendants for far less than their true value through fraudulent misrepresentations and material omissions and breaches of fiduciary duty"). The civil conspiracy is thus entirely duplicative of the direct liability and aiding and abetting claims, and it should be dismissed for that reason alone. *See, e.g.*, *Fezzani v. Bear, Stearns & Co. Inc.*, 2023 WL

4625544, at *4 (S.D.N.Y. July 19, 2023) (holding that "a [civil conspiracy] claim that 'offers no new allegations beyond those alleged in support of other tort claims alleged elsewhere must be dismissed as duplicative'"); *Hua Xue v. Jensen*, 2020 WL 6825676, at *12 (S.D.N.Y. Nov. 19, 2020) (same).

The conspiracy claim fails regardless, because the Amended Complaint does not allege the necessary elements of (1) an "agreement" with Vanderhaegen to engage in misconduct, or (2) an "overt act" or "intentional participation" in furtherance of it.  *Supra* pages 28-30 (identifying defects in similar elements for aiding and abetting claims); *Spartan Cap. Sec., LLC v. Sports Field Holdings, Inc.*, 2021 WL 665031, at *3 (S.D.N.Y. Feb. 19, 2021) ("Plaintiff has not alleged an independent tort which would allow for a civil conspiracy claim to be brought, nor any facts to show an agreement existed between the Defendants or that there was any intentional participation in such a plan."); *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 121 (S.D.N.Y. 2009) (noting "the defendant must know the wrongful nature of the primary actor's conduct" and dismissing conspiracy claim where "the complaint does not establish that [defendant] engaged in any 'independent culpable behavior' connecting him to the underlying fraud").  Further, as discussed in connection with the aiding and abetting claims, the Amended Complaint entirely fails to allege any motive for Origis USA to join a conspiracy or that Origis USA was aware of—let alone knowingly agreed to assist in—any fraud or breach of fiduciary duty.  *Supra* pages 28-30.

### F.     Plaintiffs Fail To State A Claim For Tortious Interference With Contract Against Origis USA (Counts XI and XII)

Origis USA pointed out in its prior submission to the Court that Plaintiffs sought to hold Origis USA liable for breaching contractual provisions to which it was *expressly not a party*.  Dkt. No. 19 at 2.  Rather than outright dismiss those facially meritless claims, Plaintiffs simply replaced them with "tortious interference" with contract claims, which fare no better.

Plaintiffs fail to plead "intentional procurement of the third party's breach of the contract" by Origis USA, as required to state a tortious interference claim against it.  *See Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 318–19 (S.D.N.Y. 2019) (Failla, J.).  As discussed above, Plaintiffs fail to adequately plead how any particular piece of information from Origis USA was false, that Origis USA knew such information was false, or that Origis USA even knew which of those materials Vanderhaegen chose to share with Plaintiffs to allegedly induce them to sell.  *E.g.*, *INV Accelerator, LLC v. MX Techs., Inc.*, 2020 WL 882902, at *4 (S.D.N.Y. Feb. 24, 2020) (dismissing claim where allegations of intentional procurement were "devoid of further factual enhancement" and "implausible").

Moreover, Plaintiffs' claims also fail because a tortious interference claim requires that "the defendant's actions were the 'but for' cause of the alleged breach."  *Clean Coal*, 377 F. Supp. 3d at 319.  The Amended Complaint itself negates this element.  Plaintiffs' entire theory is that ***Vanderhaegen*** spearheaded the alleged fraud to enrich himself personally.  *Supra* pages 13-14; *see also* AC ¶ 27 ("Vanderhaegen, to induce Plaintiffs to sell their interest . . . ."); AC ¶ 31 ("Vanderhaegen wasted no time in harvesting the fruits of his deceit . . . .").  Given these oft-repeated allegations, Plaintiffs cannot plausibly claim that Vanderhaegen would not have purportedly breached the SRA "but for" Origis USA.  *See N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, 2013 WL 1500333, at *6 (S.D.N.Y. Apr. 12, 2013) ("When a complaint alleges that [the breaching party] exhibited a predisposition toward breaching the Agreement independent of the alleged involvement of the Defendants, Plaintiffs cannot establish 'but for' causation."); *Clean Coal*, 377 F. Supp. 3d at 318-20 (dismissing tortious interference claim because plaintiff had not "plausibly alleged anything other than an independent decision by [the affiliate] to breach the [contract]" and "[t]here is no allegation that [the defendant] directed or commanded [its affiliate]

to breach"); *Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 447 (S.D.N.Y. 1988), *aff'd*, 916 F.2d 820 (2d Cir. 1990) (dismissing tortious interference claim where "plaintiffs do not allege and cannot prove that defendants were the 'but for' cause of [the defendant's alleged] breach," because "[i]n no way do plaintiffs allege that the Skaarup defendants were the motivating force behind Chemical's breach").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims against Origis USA with prejudice.

Dated:  New York, New York
       July 28, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By:  /s/ *Blair Connelly*
    Blair Connelly
    Blake T. Denton
    Matthew Valenti
    1271 Avenue of the Americas
    New York, New York 10020
    Tel: (212) 906-1200
    Fax: (212) 751-4864
    Email:  blair.connelly@lw.com
    Email:  blake.denton@lw.com
    Email:  matthew.valenti@lw.com

    *Attorneys for Defendant Origis USA LLC*