UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PENTACON BV and BALTISSE BV,

                                    Plaintiffs,

                    -v.-

GUY VANDERHAEGEN; GUY VANDERHAEGEN
REVOCABLE TRUST; PELICAN INVEST, LLC;
PELICAN INTERNATIONAL, LLC; ORIGIS ENERGY
LLC; and ORIGIS USA LLC,

                                    Defendants.

---

23 Civ. 2172 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Pentacon BV ("Pentacon") and Baltisse NV ("Baltisse," and collectively, "Plaintiffs") brought this action seeking redress for the harm they suffered as a result of an alleged scheme to seize their interests in Defendant Origis USA LLC ("Origis USA"), a solar power start-up, and resell those interests at a significant profit. On March 25, 2024, the Court issued an Opinion and Order (the "MTD Order") granting in part and denying in part the motion to dismiss Plaintiffs' amended complaint (the "Amended Complaint") that was filed by Defendants Guy Vanderhaegen; Guy Vanderhaegen Revocable Trust ("GVR Trust"); Pelican Invest, LLC ("Pelican Invest"); and Pelican International, LLC ("Pelican International," and collectively, the "Vanderhaegen Defendants"), and granting in full the motion to dismiss that was filed by Defendant Origis USA (together with the Vanderhaegen Defendants, "Defendants"). *See generally Pentacon BV* v. *Vanderhaegen,* — F. Supp. 3d —, No. 23 Civ. 2172 (KPF), 2024 WL 1255992 (S.D.N.Y. Mar. 25, 2024).

Two weeks after the MTD Order was issued, Plaintiffs and the Vanderhaegen Defendants filed separate motions seeking reconsideration of the MTD Order pursuant to Local Civil Rule 6.3.  In brief, Plaintiffs ask the Court to reconsider its dismissal of a subset of Plaintiffs' claims against Origis USA, in view of certain factual allegations and legal authority that Plaintiffs claim the Court overlooked.  The Vanderhaegen Defendants, for their part, ask the Court to reconsider its finding that New York law, and not Belgian law, governs the existence and scope of any fiduciary duties that the Vanderhaegen Defendants owed to Plaintiffs.  In the alternative, the Vanderhaegen Defendants ask that the Court certify that portion of the MTD Order for interlocutory appeal.  For the reasons set forth below, the Court denies both motions in full.

## BACKGROUND[1]

The Court assumes familiarity with the factual and procedural histories of this litigation and incorporates by reference the facts set forth in the MTD

---

[1]    This Opinion draws its facts from the Amended Complaint (Dkt. #30 ("AC")).  The Court also relies, as appropriate, on Exhibit 1 to the Amended Complaint (Dkt. #30-1 ("SRA")), a copy of the parties' Share Redemption Agreement.

For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of their motion for reconsideration as "Pl. Br." (Dkt. #58); to the Vanderhaegen Defendants' memorandum of law in support of their motion for reconsideration as "Van. Br." (Dkt. #55); to Origis USA's memorandum of law in opposition to Plaintiffs' motion as "Origis Opp." (Dkt. #64); to Plaintiffs' reply memorandum of law in further support of their motion as "Pl. Reply" (Dkt. #66); and to the Vanderhaegen Defendants' reply memorandum of law in further support of their motion as "Van. Reply" (Dkt. #65).

The Court also refers, as appropriate, to certain submissions filed in connection with Defendants' motions to dismiss as follows: to Origis USA's memorandum of law in support of its motion to dismiss as "Origis MTD Br." (Dkt. #36); to Plaintiffs' memorandum of law in opposition to Origis USA's motion as "Pl. Origis MTD Opp." (Dkt. #43); and to Origis USA's reply memorandum of law as "Origis MTD Reply" (Dkt. #46).

Order.  (*See generally* Dkt. #51 ("MTD Order")).  The Court summarizes below only the facts essential to the adjudication of the instant motions.

## A.    Factual Background

Origis Energy LLC ("Origis Energy," formerly Origis Energy NV), a solar energy start-up, was founded in Belgium in 2008.  (AC ¶ 6).  Defendant Vanderhaegen ran its day-to-day business operations.  (*Id.* ¶ 7).  In order to build its U.S. business, Origis Energy formed Defendant Origis USA, which thereafter served as the operating subsidiary for all of Origis Energy's U.S. activity; the two entities "functioned as a single business under Vanderhaegen's command and control."  (*Id.* ¶¶ 7, 52).  Plaintiffs Pentacon and Baltisse each came to hold approximately 29% of Origis USA.  (*Id.* ¶ 52).

Origis USA quickly became a leading renewable energy developer in the United States, with a strong development pipeline of solar energy and energy storage projects.  (AC ¶ 53).  Importantly, Vanderhaegen, as its President and CEO, exercised effective control over all material information about the business, including the flow of that information to Plaintiffs.  (*Id.* ¶¶ 56-57).  Over time, friction developed between the parties, and Plaintiffs grew concerned about what they perceived to be Vanderhaegen's efforts to isolate them from the business.  (*Id.* ¶ 60).

According to Plaintiffs, determined to "take advantage of the situation he had created and his carefully [] orchestrated plan to restrict Plaintiffs' access to ... information," Vanderhaegen put in place a scheme to "remove Plaintiffs from the picture ... and expropriate for himself an overwhelming portion of the

value of Origis USA held by Plaintiffs." (AC ¶ 63).  This scheme began on
April 30, 2019, when Vanderhaegen made his first proposal to buy Plaintiffs'
interests in Origis USA.  (*Id.* ¶ 66).  On that day, Vanderhaegen told Plaintiffs
that Origis USA was worth about $160 million, proposing to pay just under
$100 million for Plaintiffs' collective 58% ownership interest in the company.
(*Id.* ¶ 67).  According to Plaintiffs, at the same time, Defendants had in their
possession secret analyses showing that Origis USA was worth much more.
(*Id.* ¶ 69).

In December 2019, after Plaintiffs and Defendants had begun negotiating
a letter of intent in anticipation of the deal, Vanderhaegen made another
proposal to buy out Plaintiffs.  (AC ¶¶ 80-81).  This time, his offer was based on
a $205 million valuation for Origis USA.  (*Id.*).  As before, however,
contemporaneous documentation reveals that internal valuations of the
company were much higher than $205 million — to be precise, at least $265 to
$285 million.  (*Id.* ¶¶ 82-84).

On February 3, 2020, the parties signed a letter of intent, which letter set
the purchase price for Pentacon's and Baltisse's interests at $56 million apiece,
based on a total valuation for Origis USA of $205 million.  (AC ¶¶ 86, 89).  Just
before the parties signed the letter of intent, Vanderhaegen reassured Plaintiffs
that they should trust the information that he was providing to them: "[y]ou are
member[s] of the Board of Directors to which I have reporting obligations … [i]f
I were to deliberately misrepresent things there, then I would have a problem."
(*Id.* ¶ 87).  Following the signing of the letter of intent, Vanderhaegen continued

to circulate internal valuations for Origis USA that were much greater than any presented to Plaintiffs.  (*Id.* ¶¶ 90-92).

Vanderhaegen's misrepresentations did not stop there.  With the buyout transaction still pending, Plaintiffs began expressing their concerns to Vanderhaegen about the anticipated purchase price.  (AC ¶ 99).  Vanderhaegen continued to reassure Plaintiffs; for example, in an email dated August 28, 2020, Vanderhaegen indicated that Plaintiffs would soon receive an updated set of valuations that would "remove[] [thei]r uncertainty about the value of [Origis USA]."  (*Id.*).  Plaintiffs received the promised valuations on September 10, 2020, via a report provided by Vanderhaegen that estimated the value of Origis USA's project pipeline at $147 million.  (*Id.* ¶ 100).  At the same time, Vanderhaegen purportedly concealed from Plaintiffs certain internal valuations that estimated the worth of Origis USA's projects as potentially exceeding $1.5 billion.  (*Id.* ¶ 101).

On September 14, 2020, the parties executed a Share Redemption Agreement (the "SRA").  (AC ¶ 115).  The SRA provided for the transfer of Plaintiffs' positions in Origis Energy and Origis USA to Defendants for a total of $105 million in two closings, one on October 15, 2020 (the "First Closing"), and one on January 4, 2021 (the "Second Closing," and together with the First Closing, the "Buyout Transaction").  (*Id.* ¶ 23).  The Buyout Transaction nominally took the form of a share redemption by Origis Energy, but was effectively a buyout of Pentacon and Baltisse by Origis USA, financed by a non-

party shareholder, for the benefit of Origis USA's remaining owners.  (*Id.* ¶ 116).

Before the Second Closing, unbeknownst to Plaintiffs, Defendants had entered into various agreements with investment bankers in anticipation of the potential sale of Origis USA and/or its assets to a third party, which sale was to follow Defendants' purchase of Plaintiffs' interests in the company.  (AC ¶ 29).  Indeed, Defendants had hired investment bankers to investigate such a sale as early as July 2020, and had begun conducting initial market tests in early 2021.  (*Id.* ¶¶ 105, 136-137).  By the summer of 2021, Origis USA's bankers had completed the preparatory work necessary to solicit bids for the company.  (*Id.* ¶¶ 29, 148).

On September 8, 2021, Vanderhaegen met with Antin Infrastructure Partners ("Antin"), a highly experienced solar energy investor, confirming a deal for Origis USA for $1.4 billion (the "Antin Transaction").  (AC ¶ 152).  The Antin Transaction was publicly announced on October 18, 2021, but the $1.4 billion purchase price did not become known to Plaintiffs until early 2022.  (*Id.* ¶¶ 154-155).  Plaintiffs thereafter demanded certain information from Origis, in accordance with their rights under Section 8.4 of the SRA, so that Plaintiffs could investigate the Antin Transaction fully.  (*Id.* ¶¶ 156-158).

**B.    Procedural Background**

Plaintiffs filed the initial complaint in this case in New York state court on February 14, 2023.  (Dkt. #1 at 2; *see generally* Dkt. #1-1 (state court complaint)).  Defendants filed a Notice of Removal on March 14, 2023,

removing the case to this Court.  (*See generally* Dkt. #1).  On April 27, 2023, the Vanderhaegen Defendants and Origis USA filed separate pre-motion letters, each requesting leave to file a motion to dismiss Plaintiffs' complaint.  (*See* Dkt. #18 (Vanderhaegen Defendants); Dkt. #19 (Origis USA)).  Plaintiffs responded in turn on May 2, 2023.  (*See* Dkt. #20 (response to Vanderhaegen Defendants); Dkt. #21 (response to Origis USA)).

The Court held a pre-motion conference to discuss the parties' submissions on May 19, 2023.  (*See* May 19, 2023 Minute Entry; Dkt. #24 (transcript of proceedings)).  At the conference, the Court set a schedule for briefing on Defendants' anticipated motions to dismiss.  (*Id.*).  On June 12, 2023, Plaintiffs filed an Amended Complaint (Dkt. #30), which complaint removed Origis Energy (but not Origis USA) as a named Defendant upon Defendants' earlier representation that Origis Energy had ceased to exist following a statutory merger with Defendant Pelican International (Dkt. #27).

Thereafter, the Vanderhaegen Defendants and Origis USA each filed a motion to dismiss the Amended Complaint and accompanying papers on July 28, 2023.  (*See* Dkt. #31-34 (Vanderhaegen Defendants' motion papers); Dkt. #35-37 (Origis USA's motion papers)).  Plaintiffs filed memoranda of law opposing the respective motions on September 29, 2023.  (*See* Dkt. #40-42 (opposition to Vanderhaegen Defendants); Dkt. #43 (opposition to Origis USA)). Finally, Defendants filed their reply papers on October 13, 2023.  (*See* Dkt. #47-48 (Vanderhaegen Defendants' reply papers); Dkt. #46 (Origis USA's reply papers)).

On March 25, 2024, the Court issued the MTD Order, granting in part and denying in part the Vanderhaegen Defendants' motion to dismiss and granting in full Origis USA's motion to dismiss. (*See* Dkt. #51). Specifically, the Court:

- Denied in full the Vanderhaegen Defendants' motion to dismiss Plaintiffs' claims for fraud (Count One), fraudulent inducement of contract (Count Two), constructive fraud (Count Five), and breach of fiduciary duty (Count Six) (*see id.* at 17);

- Denied the Vanderhaegen Defendants' motion to dismiss Plaintiffs' claim for breach of Section 4.4 of the SRA (Count Seven) as to Defendants Pelican International, Pelican Invest, and GVR Trust, and granted it as to Vanderhaegen (*see id.*);

- Granted the Vanderhaegen Defendants' motion to dismiss Plaintiffs' claims for aiding and abetting fraud (Count Three), civil conspiracy (Count Four), breach of Section 5.5 of the SRA (Count Eight), and breach of the implied covenant of good faith and fair dealing (Count Nine) (*see id.*); and

- Granted Origis USA's motion to dismiss in full, dismissing Counts One, Two, Three, and Four as to Origis USA, as well as Plaintiffs' claims for aiding and abetting breach of fiduciary duty (Count Ten); tortious interference with the SRA as a consequence of the Vanderhaegen Defendants' alleged breach of Section 4.4 (Count Eleven); and tortious interference with the SRA as a consequence of the Vanderhaegen Defendants' alleged breach of Section 5.5 (Count Twelve) (*see id.* at 17-18).

On April 8, 2024, Plaintiffs and the Vanderhaegen Defendants each filed a motion for reconsideration of the MTD Order and accompanying papers. (*See* Dkt. #54-55 (Vanderhaegen Defendants' motion papers); Dkt. #57-58 (Plaintiffs' motion papers)). The parties filed their respective opposition papers on

April 22, 2024 (*see* Dkt. #64 (Origis USA's opposition papers); Dkt. #63 (Plaintiffs' opposition papers)), and their reply papers on April 29, 2024 (*see* Dkt. #65 (Vanderhaegen Defendants' reply papers); Dkt. #66 (Plaintiffs' reply papers)).

## DISCUSSION

### A. Applicable Law

#### 1. Motions for Reconsideration

Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 govern motions for reconsideration, depending on the type of order at issue. *See Cadet* v. *All. Nursing Staffing of N.Y., Inc.*, No. 21 Civ. 3994 (KPF), 2023 WL 3872574, at *4 (S.D.N.Y. Jan. 6, 2023), *reconsideration denied*, No. 21 Civ. 3994 (KPF), 2023 WL 3872558 (S.D.N.Y. Apr. 12, 2023); *Silverberg* v. *DryShips Inc.*, No. 17 Civ. 4547 (SJF), 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018); *United States* v. *Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 59(e) (motion to alter or amend judgment), 60(b) (motion for relief from judgment or order); Local Civ. R. 6.3 (motion for reconsideration).[2]

---

[2]     Local Rule 6.3 states:

> Unless otherwise provided by the Court or by statute or rule (such as Fed. R. Civ. P. 50, 52, and 59), a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment.  There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.  The time periods for the service of answering and reply memoranda, if any, shall be governed by Local Civil Rule 6.1(a) or

Reconsideration motions are subject to a "strict" standard, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and will be granted "only when the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Sec. & Exch. Comm'n* v. *Gottlieb*, No. 98 Civ. 2636 (LAP), 2021 WL 5450360, at *2 (S.D.N.Y. Nov. 22, 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

Importantly, a reconsideration motion is not a vehicle (i) to "introduce additional facts not in the record on the original motion"; (ii) to "advance[] new arguments or issues that could have been raised on the original motion"; or (iii) to "relitigate an issue already decided." *Silverberg*, 2018 WL 10669653, at *2 (collecting cases); *accord Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012). Instead, reconsideration may be warranted where the movant "can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257; *see also Lichtenberg* v. *Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (summary order). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the

---

(b), as in the case of the original motion[.]

Local Civ. R. 6.3. Importantly, Local Rule 6.3 does not set forth the standard against which a court is to judge a motion for reconsideration; rather, "Local Civil Rule 6.3 is necessary because the Federal Rules of Civil Procedure do not specify the time periods governing a motion for reconsideration or reargument." *Id.* (committee note).

district court." *Vincent* v. *Money Store*, No. 03 Civ. 2876 (JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011) (internal citations and quotation marks omitted).

### 2.    Interlocutory Appeal Under 28 U.S.C § 1292(b)

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler* v. *Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). However, under limited circumstances, Section 1292(b) of Title 28 of the United States Code empowers a district court to grant a party leave to appeal an interlocutory order. *See generally* 28 U.S.C. § 1292(b). Specifically, Section 1292(b) provides that a district court may certify an order for interlocutory appeal where such order "[i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] [] an immediate appeal from th[at] order may materially advance the ultimate termination of the litigation[.]" *Id.* The party bringing the motion to certify an order for interlocutory appeal has the burden of demonstrating that these criteria are met. *See Casey* v. *Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005).

Importantly, "even where the three legislative criteria of [S]ection 1292(b) appear to be met, district courts retain unfettered discretion to deny certification if other factors counsel against it." *Transp. Workers Union of Am., Loc. 100, AFL-CIO* v. *N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005) (internal citations and quotation marks omitted). "Such unfettered discretion can be for 'any reason, including docket congestion' and 'the system-

11

wide costs and benefits of allowing the appeal.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quoting *Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).

The Second Circuit has advised that "interlocutory appeals are strongly disfavored in federal practice," and movants cannot invoke the appellate process "as a vehicle to provide early review [even] of difficult rulings in hard cases." *In re Adelphia Commc'ns Corp.*, No. 07 Civ. 9999 (NRB), 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008) (citing *In re Levine*, No. 94 Civ. 44257 (NRB), 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004)). Indeed, "the Second Circuit has held that challenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review unless they present difficult questions of substantive law." *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (indicating that certification of a non-final order pursuant to Section 1292(b) is an extraordinary procedure only granted in "exceptional circumstances") (first citing *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56-57 (Bankr. S.D.N.Y. 2002); and then citing *Gottesman* v. *General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)). To that end, Section 1292(b) should "be strictly construed," and a district court must "exercise great care in making a [Section] 1292(b) certification." *Wausau Bus. Ins. Co.* v. *Turner Constr. Co.*, 151 F. Supp. 2d 488, 491-92 (S.D.N.Y. 2001) (citing *Westwood Pharm., Inc.* v. *Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)).

### B.    Analysis

As previously discussed, both Plaintiffs and the Vanderhaegen Defendants seek reconsideration of some portion of the MTD Order.  Plaintiffs ask the Court to reconsider its dismissal of certain of their claims against Origis USA, in view of factual allegations and legal authority that Plaintiffs claim the Court overlooked; the Vanderhaegen Defendants, on the other hand, ask the Court to reconsider its finding that New York law, and not Belgian law, governs the existence and scope of any fiduciary duties that the Vanderhaegen Defendants owed to Plaintiffs.  In the alternative, the Vanderhaegen Defendants ask that the Court certify for interlocutory appeal the question of what law governs Defendants' purported fiduciary duties.  The Court considers the parties' motions for reconsideration in turn, denying both in full.  The Court additionally denies the Vanderhaegen Defendants' request to certify the fiduciary duty question for interlocutory appeal.

### 1.    The Court Denies Plaintiffs' Motion to Reconsider Its Decision to Dismiss Certain Claims Against Origis USA

The Court first considers Plaintiffs' motion seeking reconsideration of the Court's decision to dismiss certain of Plaintiffs' claims against Origis USA.  By way of background, the MTD Order granted Origis USA's motion to dismiss in full, dismissing all of Plaintiffs' claims against Origis USA, *viz.*, Plaintiffs' claims for fraud (Count One); fraudulent inducement of contract (Count Two); aiding and abetting fraud (Count Three); civil conspiracy (Count Four); aiding and abetting breach of fiduciary duty (Count Ten); tortious interference with the SRA as a consequence of the Vanderhaegen Defendants' alleged breach of

13

Section 4.4 (Count Eleven); and tortious interference with the SRA as a consequence of the Vanderhaegen Defendants' alleged breach of Section 5.5 (Count Twelve).  (*See* MTD Order 17-18).  In their motion for reconsideration, Plaintiffs seek reconsideration of the Court's dismissal of Counts One, Two, Three, Ten, and Eleven.  (Pl. Br. 1).

Plaintiffs argue that reconsideration is appropriate because "the Court overlooked controlling law or factual matters that had been previously put before it … and which might reasonably be expected to alter the conclusion reached by the Court."  (Pl. Br. 1 (internal quotation marks omitted)).  Specifically, Plaintiffs argue that the Court overlooked facts and law supporting their claims that "[i] Origis USA is vicariously liable for the actions of its CEO Guy Vanderhaegen; [ii] Origis USA is liable because of its official corporate actions and the involvement of senior officers other than Vanderhaegen; and [iii] the acts of Origis USA and its senior officers were undertaken in furtherance of the company's business."  (*Id.*).  Having already considered and rejected the arguments set forth in Plaintiffs' motion, the Court denies Plaintiffs' motion for reconsideration.

> ### a.   The Court Previously Considered and Rejected Plaintiffs' Argument That Origis USA Is Liable for the Allegedly Unlawful Actions of Its CEO

Plaintiffs first argue that the Court overlooked facts and law demonstrating that "Origis USA is vicariously liable for the actions of its CEO Guy Vanderhaegen."  (Pl. Br. 1).  According to Plaintiffs, "it is 'black-letter law' that a corporation is a legal fiction that 'can only act through its officers,

14

directors and employees.'"  (*Id.* at 4).  Further, "'where conduct falls within the scope of the [officers'] authority, everything they know or do is imputed' to the company they serve."  (*Id.* (quoting *Kirschner* v. *KPMG LLP*, 15 N.Y.3d 446, 466 (2010) (citation omitted)).  In Plaintiff's view, "Origis USA is liable for Vanderhaegen's misdeeds under these traditional principles."  (*Id.*).  As Plaintiffs admit (*see id.*), this is an argument they raised in their submissions in opposition to Origis USA's motion to dismiss (*see, e.g.*, Pl. Origis MTD Opp. 11 ("Despite Origis USA's apparent claim that Vanderhaegen and its other employees went rogue, Origis USA is liable for the misconduct of its agents taken within the scope of their authority so long as they 'act[ed] at least in part to benefit [Origis USA].'" (quoting *Agyin* v. *Razman*, 986 F.3d 168, 185 (2d Cir. 2021)))).

In their motion for reconsideration, Plaintiffs do not claim that the Court failed to address this argument; rather, they assert that — in rejecting the argument — the Court "overlooked [certain] allegations."  (Pl. Reply 5).  These ostensibly overlooked allegations include the following:

- "Vanderhaegen's actions were undertaken in []his corporate role, which empowered Vanderhaegen to 'speak authoritatively about all aspects of Origis USA, including on the value of Origis USA and its assets.'  AC ¶ 47."

- "Vanderhaegen transmitted false and misleading information about Origis USA to Plaintiffs from his Origis USA email address and on Origis USA's letterhead.  *See* [Pl. Origis MTD Opp.] 4 n.3, 12."

- "Vanderhaegen 'had superior command of company information as CEO and President of Origis USA.' AC ¶ 68."

- "Vanderhaegen wielded his corporate authority to block Plaintiffs 'from gaining an independent understanding of Origis USA and its value.' AC ¶¶ 57-58, 64."

- "Vanderhaegen used his powers as CEO to enlist his fellow Origis USA officers to prepare both the secret internal valuations concealed from Plaintiffs and the false valuations provided for Plaintiffs' consumption. AC ¶¶ 47, 75-76, 77, 81-84, 90-91, 100-02."

- "[T]o 'remove [Plaintiffs'] uncertainty' about the value of Origis USA's assets, [Vanderhaegen] represented that the final $147 million valuation reflected the 'value of [Origis USA's] projects.' AC ¶¶ 99-100 (emphasis added)."

(Pl. Br. 4-5; *see also* Pl. Reply 5-6). In Plaintiffs' view, these allegations are sufficient to establish that "[Vanderhaegen's] fraud was not undertaken in his personal capacity alone but also in his capacity as an officer and director of Origis USA." (Pl. Br. 4).

Plaintiffs do not misstate the "black-letter law." Indeed, as the Court wrote in the MTD Order,

> Under New York Law, vicarious liability attaches only where an employee's acts were "in furtherance of the employer's business and within the scope of employment." *Browne* v. *Lyft, Inc.*, 194 N.Y.S.3d 85, 87-88 (2d Dep't 2023) (internal quotation marks omitted).

(MTD Order 34-35). But as the Court also made clear in the MTD Order, based upon the Court's own review of the record:

> [I]t is clear that Vanderhaegen did not make the misrepresentations [at issue] in furtherance of Origis USA's business; rather, he (allegedly) did so to benefit

16

> himself and the other Vanderhaegen entities in their
> capacity as owners of Origis USA.

(*Id.* at 35).  Furthermore, in making this finding, the Court cited to pages three

through four of Origis USA's reply memorandum of law in further support of

their motion to dismiss, which pages explain that:

> Plaintiffs do not articulate how Vanderhaegen was
> acting in his 'official capacity' for Origis USA when
> fulfilling contractual obligations that Plaintiffs imposed
> solely on his personal entity, Pelican International,
> under a contract that could *only* benefit him personally.
> [Origis MTD Br.] 23-26; *infra* pages 5-7; AC ¶ 153.
> Vanderhaegen's acts were therefore not "in furtherance
> of" Origis USA's business and are not a basis for
> vicarious liability.  *Browne*, 219 A.D.3d at 446-47
> (dismissing respondeat superior claim because
> "employee's actions [were] taken for wholly personal
> reasons" and thus "the challenged conduct cannot be
> said to fall within the scope [his] employment"); *City of
> Syracuse* v. *Loomis Armored US, LLC*, 900 F. Supp. 2d
> 274, 299 (N.D.N.Y. 2012) ("Plaintiff has not alleged that
> [employee's] conduct benefitted [employer] in any way,
> or that [employer] induced his conduct").

(Origis MTD Reply 3-4 (citations omitted)).

Accordingly, it cannot be said that the Court "overlooked" Plaintiffs'

allegations concerning Origis USA's purported vicarious liability for

Vanderhaegen's actions.  Rather, Plaintiffs' allegations were simply insufficient

to convince the Court that Vanderhaegen's actions were taken in furtherance of

Origis USA's business, even if those actions were made possible by virtue of

Vanderhaegen's position as Origis USA's CEO.  *See City of Syracuse* v. *Loomis

Armored US, LLC*, 900 F. Supp. 2d 274, 298-99 (N.D.N.Y. 2012) (dismissing

vicarious liability claim against employer at motion to dismiss stage) ("Although

it is true that Sean McGuigan was able to steal from Plaintiff because of his employment, his criminal conduct was neither incidental to the furtherance of Defendant's business, nor induced by Defendant."). The Court thus declines to reconsider its dismissal of certain of Plaintiffs' claims against Origis USA on the basis that Origis USA is vicariously liable for Vanderhaegen's actions.

> **b.    The Court Previously Considered and Rejected Plaintiffs' Argument That Origis USA Is Liable Because of Its Own Actions**

Second, Plaintiffs argue that the Court overlooked facts and law demonstrating that "Origis USA is liable because of its official corporate actions and the involvement of senior officers other than Vanderhaegen" (Pl. Br. 1), *i.e.*, "based on its own actions and that of its employees" (*id.* at 5). On Plaintiffs' account, these actions include "the creation of false financial information to be transmitted to Plaintiffs[;] the financing of the buyout by issuing debt, penny warrants, and options on solar projects to Origis USA's minority shareholder[;] and the payment of the dividend used to redeem Plaintiffs' shares." (*Id.*). Again, Plaintiffs made this argument in their submissions in opposition to Origis USA's motion to dismiss. (*See, e.g.*, Pl. Origis MTD Opp. 5 ("Origis USA's involvement was not limited to statements by its CEO to Plaintiffs. Though Vanderhaegen may have orchestrated the fraud in that capacity, he did not act alone.")).

As an initial matter, the only action that would potentially fall within the scope of a claim for fraud is Origis USA's alleged "creation of false financial information to be transmitted to Plaintiffs[.]" (Pl. Br. 5). Contrary to Plaintiffs'

18

assertion, the Court squarely addressed this allegation in the MTD Order. Specifically, the Court stated:

> [T]o the extent information prepared by Origis USA made its way to Plaintiffs, Origis USA was not involved. Rather, Plaintiffs' allegations establish that any information prepared by Origis USA was transmitted to Plaintiffs exclusively via Vanderhaegen (see AC ¶¶ 75, 83, 90, 100), and do not support any plausible finding that Origis USA itself provided any valuation information to Plaintiffs (see Origis [MTD] Reply 4). Nor did Origis USA have any duty of disclosure to Plaintiffs under the SRA or otherwise. (Origis [MTD] Br. 21-23). And, critically, Origis USA was not a party to Section IV of the SRA, the provision of the SRA that committed its signatories to the Information Warranty. (*Id.* at 21-22).

(MTD Order 34). Plaintiffs may disagree with the Court's findings, but that alone is not a basis for reconsideration. *See Goldfarb* v. *Channel One Russia*, No. 18 Civ. 8128 (JPC), 2021 WL 1392850, at *8 (S.D.N.Y. Apr. 13, 2021) (indicating that the argument that the court "misapplied case law to the facts in reaching [its] conclusion" is an inappropriate ground for reconsideration).

What is more, on the issue of Origis USA's indirect (*i.e.*, aiding and abetting) liability, the Court explained:

> Plaintiffs … have failed to allege actual knowledge on the part of Origis USA as to either the underlying fraud or the breaches of fiduciary duty. … [T]he Amended Complaint lacks any allegations that Origis USA, specifically, knew of Vanderhaegen's plan to defraud Plaintiffs or that it was assisting in Vanderhaegen's alleged fraud and accompanying breach of fiduciary duty. Absent plausible allegations of this knowledge, Plaintiffs cannot implicate Origis USA in Vanderhaegen's fraud merely due to the fact that it provided financial information to Vanderhaegen.

(MTD Order 65-66). Again, Plaintiffs may disagree with the Court's finding, but reconsideration thereof would constitute improper "relitigat[ion] [of] an issue already decided." *Silverberg*, 2018 WL 10669653, at *2 (citing *Shrader*, 70 F.3d at 257).

While the Court believes it adequately explained its findings in the MTD Order — as exemplified by the above excerpts — it pauses here to address, briefly, the substance of Plaintiffs' disagreement with the Court. To begin, the Court acknowledges that a defendant need "not communicate with [a] plaintiff directly" to be liable for fraud when the defendant prepares false or misleading statements on which the plaintiff reasonably relies. *See Sec. Inv. Prot. Corp.* v. *BDO Seidman, LLP*, 222 F.3d 63, 77 (2d Cir. 2000). But liability still requires a showing of an intent to defraud (for direct liability, *see Wall* v. *CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006)), or actual knowledge (for aiding and abetting liability, *see Kolbeck* v. *LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998)). Plaintiffs claim that this intent and knowledge can be inferred from the allegation that "over the course of more than a year, Origis USA's officers and employees consistently developed two sets of valuations." (Pl. Br. 6). But, in the Court's view, this allegation alone did not — and still does not — create a plausible inference of fraudulent intent or actual knowledge of Vanderhaegen's fraud on the part of Origis USA. To that end, the Court rejects Plaintiffs' assertion that "[t]here is no logical explanation for why [Origis USA's] officers would prepare such wildly disparate valuations unless they knew of the scheme." (*Id.* at 8). To the contrary, the

20

Court finds it entirely possible that Origis USA's employees could prepare "wildly disparate valuations" without this knowledge; corporate employees (particularly those of a mercurial start-up) prepare all different kinds of financial projections and valuations for equally varying reasons, most of which are far more conceivable than the execution of a fraud.[3]

Above all, the Amended Complaint contains no allegations that any Origis USA employee (other than Vanderhaegen) delivered any valuation materials to Plaintiffs; made representations about any valuation materials to Plaintiffs; controlled when, how, or which valuation materials were shared with Plaintiffs; or had any responsibility for creating for Plaintiffs or providing Plaintiffs with valuation materials to begin with. (*See* Origis MTD Reply 5

---

[3]    Plaintiffs emphasize that the Court "neglect[ed]" their assertion that Origis USA's employees "knowingly provided *false* financial information to Plaintiffs." (Pl. Br. 8 (emphasis in original)). On that point, the Court recognizes the tension inherent in its finding that Vanderhaegen's statements to Plaintiffs about Origis USA's value were materially false and misleading for the purposes of fraud, and yet Origis USA's employees did not knowingly provide false financial information to Plaintiffs.

Importantly, the Court's conclusion that the quantitative valuation information that Vanderhaegen presented to Plaintiffs was actionable in fraud did not rest on a finding that those statements were objectively false. (*See* MTD Order 36-37). As the Court stated in the MTD Order, "'statements of value' are 'generally considered opinion and therefore not as demonstrably false as other possible misrepresentations.'" (*Id.* at 36 (quoting *M&T Mortg. Corp.* v. *White*, 736 F. Supp. 2d 538, 563 (E.D.N.Y. 2010))). *See also In re E-House Sec. Litig.*, No. 20 Civ. 2943 (ER), 2021 WL 4461777, at *11 (S.D.N.Y. Sept. 29, 2021) ("The Second Circuit has held that statements about a company's projections [are treated as] opinions rather than guarantees." (internal quotation marks omitted)), *aff'd sub nom. Maso Cap. Invs. Ltd.* v. *E-House (China) Holdings Ltd.*, No. 22-355, 2024 WL 2890968 (2d Cir. June 10, 2024) (summary order). In the MTD Order, the Court did not find that Vanderhaegen's statements to Plaintiffs about Origis USA's value were objectively false; rather, the Court held that Vanderhaegen, as the speaker of those statements, (plausibly) "did not in fact hold the opinion stated or … subjectively was aware that there was no reasonable basis for it," making the statements actionable in fraud. (*See* MTD Order 36 (citing *M&T Bank Corp.* v. *McGraw Hill Cos., Inc.*, 5 N.Y.S.3d 783, 785 (4th Dep't 2015) (quoting *IKB Int'l S.A.* v. *Bank of Am.*, No. 12 Civ. 4036 (LAK), 2014 WL 1377801, at *1 (S.D.N.Y. Mar. 31, 2014)))). This finding does not extend to Origis USA's other employees, who were not involved in the presentation of the opinion statements to Plaintiffs, thus resolving the aforementioned tension.

("Plaintiffs cannot manufacture a factual dispute through their unpled, conclusory contention … that 'Origis USA obviously intended and knew that the information would be sent to Plaintiffs.'"); *id.* at 4 ("Under the SRA, Vanderhaegen's entity (Pelican International) was solely responsible for providing Plaintiffs with valuation materials." (citing SRA § 4.4))).  The Court thus declines to reconsider its dismissal of certain of Plaintiffs' claims against Origis USA on the basis that Origis USA is liable because of the actions of its employees other than Vanderhaegen.

### c.    The Court Previously Considered and Rejected Plaintiffs' Argument That Origis USA Is Liable Because the Fraudulent Scheme Was Undertaken for Origis USA's Benefit

Plaintiffs' final argument in support of reconsideration is that the Court overlooked facts and law demonstrating that "the acts of Origis USA and its senior officers were undertaken in furtherance of the company's business."  (Pl. Br. 1).  This argument, too, was made in Plaintiffs' submissions on Origis USA's motion to dismiss.  (*See, e.g.*, Pl. Origis MTD Opp. 2 ("The Amended Complaint alleges [that] … the scheme was not just for Vanderhaegen's personal benefit but also for the benefit of Origis USA.")).  While Plaintiffs do not explicitly state how a finding that Vanderhaegen's scheme was undertaken to benefit Origis USA would lend itself to reconsideration of the MTD Order, presumably, Plaintiffs intend to challenge the Court's findings that (i) Vanderhaegen was not acting in his official capacity in executing the alleged fraud and (ii) Origis USA's other officers and employees did not act with an intent to defraud or with actual knowledge of Vanderhaegen's scheme.

22

While the MTD Order was not prolix in responding to Plaintiffs' argument that Vanderhaegen's scheme was executed for the benefit of Origis USA, it did address the argument. (*See, e.g.*, MTD Order 35 ("[I]t is clear that Vanderhaegen did not make the misrepresentations in furtherance of Origis USA's business; rather, he (allegedly) did so to benefit himself and the other Vanderhaegen entities in their capacity as owners of Origis USA.")). Regardless, Plaintiffs' arguments to the contrary — many of which were made in some form in its submissions opposing Origis USA's motion to dismiss — do not now change the Court's thinking.

Plaintiffs' argument that Vanderhaegen's scheme was executed "for the benefit of Origis USA's remaining owners" does not mean his actions were undertaken for the benefit of Origis USA. (Pl. Br. 8). Plaintiffs cannot point to any controlling authority supporting the idea that an alleged motive to commit fraud that is held by a shareholder of a corporation's parent company can be imputed to that corporation or its employees, even if the corporation is a closely-held one. (*See* Origis Opp. 13 n.7). Indeed, the case Plaintiffs cite in support of this proposition, *Parshelsky's Estate* v. *Commissioner*, addressed the tax consequences of a spin-off transaction, and says nothing of the sort. (*See* Pl. Br. 9 (citing *Parshelsky's Est.* v. *Comm'r*, 303 F.2d 14, 19 (2d Cir. 1962))).[4]

---

[4]    To that end, even if it were apposite, *Parshelsky's Estate* was not cited by Plaintiffs in their briefing on Origis USA's motion to dismiss. It is thus inappropriate for the Court to consider in the context of this motion. *See Dandong* v. *Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2012 WL 6217646, at *1 (S.D.N.Y. Dec. 3, 2012) ("Defendants did not cite *Baker* in their original submissions, which means that it cannot be considered on a motion for reconsideration.").

Ultimately, as Origis USA stated in its memorandum of law on Plaintiffs' motion to dismiss, "Plaintiffs still offer no sensible theory for why Origis USA would be motivated to lie to Plaintiffs in a transaction that occurred entirely at the level of Origis Energy, Origis USA's parent company, and in which Origis USA received absolutely nothing."  (Origis MTD Br. 2-3 (emphasis omitted)). For all of these reasons, the Court declines to reconsider the MTD Order on the basis that it overlooked facts and law demonstrating that "the acts of Origis USA and its senior officers were undertaken in furtherance of the company's business."  (Pl. Br. 1).

### 2. The Court Denies the Vanderhaegen Defendants' Motion to Reconsider Its Finding That New York Law Governs Issues of Fiduciary Duty

The Court next considers the Vanderhaegen Defendants' motion, which seeks reconsideration of the MTD Order on the basis that the Court "erred in holding that a New York choice-of-law provision governed whether Defendants owed fiduciary duties as officers, directors, or shareholders of Origis, a Belgian company."  (Van. Br. 6-7).  As set forth herein, the Court ultimately declines to reconsider the MTD Order on this basis.

By way of background, the parties' SRA contains an explicit and conspicuously broad choice-of-law provision:

> This Agreement and any claim arising out of or in connection with this Agreement shall be governed by, construed, and enforced in accordance with the Laws of the State of New York without giving effect to any conflict-of-law rules or principles that would result in the application of the Laws of any other jurisdiction.

(SRA § 9.12 (emphasis added)).  In the MTD Order, the Court found that "[t]his language is sufficient to encompass all of Plaintiffs' claims," and thus that "all of Plaintiffs' claims are governed by New York law."  (MTD Order 18).  The Court further explained:

> Under New York law, "courts will generally enforce choice-of-law clauses and … contracts should be interpreted so as to effectuate the parties' intent." *Petroleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) (internal quotation marks omitted).  Importantly, the SRA's choice-of-law provision instructs this Court to decline to "giv[e] effect to any conflict-of-law rules or principles that would result in the application of the Laws of any other jurisdiction." (SRA § 9.12).  It follows that this Court should not give effect to the internal affairs doctrine. *Cf. Edgar* v. *MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle[.]").

(*Id.* at 19).

The Vanderhaegen Defendants' primary argument for reconsideration of the Court's finding on this issue surrounds the purportedly conflicting finding of *Populus Media, Inc.* v. *Erb*, an opinion of a sister court in this District that was issued one day after the MTD Order.  No. 23 Civ. 4160 (MKV), 2024 WL 1313493 (S.D.N.Y. Mar. 26, 2024).  *Populus Media* concerned, in part, claims for breach of fiduciary duty brought by a Delaware company ("Populus") against its former employee.  *Id.* at *1.  The employment contract between Populus and its former employee contained a choice-of-law clause that read:

> The terms of your employment, and the resolution of any disputes arising out of or relating to your employment agreement, your employment with the Company, or any other relationship between you and

> the Company, will be governed by and construed in
> accordance with the laws of the State of New York,
> without regard to its conflicts of laws or choice of law
> rules.

*Amended Complaint, Ex. C* at ¶ 9, *Populus Media, Inc.* v. *Erb*, No. 23 Civ. 4160

(MKV) (S.D.N.Y. June 29, 2023), Dkt. #12-3 (hereinafter "Populus Contract").

In that case, Judge Vyskocil applied the internal affairs doctrine to find that

"because [Populus] is a Delaware incorporated company, Delaware law governs

[the] [p]laintiff's fiduciary dut[y] claim," the choice of law clause

notwithstanding. *Populus Media*, 2024 WL 1313493, at *7 (internal citations

omitted).

The Vanderhaegen Defendants claim that *Populus Media* stands for the

proposition that "even a broad choice-of-law provision [cannot] displace the

internal affairs doctrine." (Van. Br. 7). They further claim that a second case,

*BBS Norwalk One, Inc.* v. *Raccolta, Inc.*, which was cited in their motion to

dismiss papers, stands for the same proposition. (*Id.* at 8-9 (citing 60 F. Supp.

2d 123 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1321 (2d Cir. 2000) (summary order));

*see also id.* at 21 (same)). In *BBS Norwalk*, the district court held that "because

the [fiduciary] claim [at issue] in th[at] case relate[d] fundamentally to the

conduct of the internal affairs of [the plaintiff], the law of the state of

incorporation — Delaware — govern[ed][,]" despite the existence of an

(admittedly "narrow") conflicting choice-of-law clause in the governing contract.

(*Id.* at 8 (quoting *BBS Norwalk*, 60 F. Supp. 2d at 129)).

As an initial matter, for the purposes of a reconsideration motion, the Vanderhaegen Defendants have failed to meet their burden to identify "controlling decisions" that could "alter the conclusion reached by the court" in the MTD Order. *Shrader*, 70 F.3d at 257. "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." *Cobalt Multifamily Investors I, LLC* v. *Shapiro*, No. 06 Civ. 6468 (KMW), 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009) (citation omitted). *BBS Norwalk* is similarly not controlling, notwithstanding the fact that it was "affirm[ed] [by the Second Circuit] for substantially the reasons articulated by the district court." *BBS Norwalk One, Inc.* v. *Raccolta, Inc.*, 205 F.3d 1321 (2d Cir. 2000) (summary order); *see also Aguas Lenders Recovery Grp. LLC* v. *Suez, S.A.*, 585 F.3d 696, 702 n.4 (2d Cir. 2009) ("[S]ummary orders … do not provide binding authority."). The Court is disinclined to grant reconsideration on this single basis.

As before, however, the Court will address the merits of the Vanderhaegen Defendants' objections to the MTD Order for the sake of the record. Ultimately, the Court maintains that it was correct in finding that New York law applied to questions of the Vanderhaegen Defendants' fiduciary duties in the MTD Order, even in view of the authorities that the Vanderhaegen Defendants now marshal before the Court.

The Vanderhaegen Defendants imply that the choice-of-law provision at issue in *Populus Media* was broader than the choice-of-law provision at issue in

this case because it purported to cover "any disputes arising out of or relating
to [the defendant's] employment agreement, [the defendant's] employment with
[Populus], or any other relationship between [the defendant] and [Populus]."
(Van. Br. 7 (quoting Populus Contract 57)).  However, the fact that the choice-
of-law provision in *Populus Media* purported to cover a wider range of potential
claims than the SRA's choice-of-law provision is irrelevant; the fiduciary duty
claims at issue here are clearly "claim[s] arising out of or in connection with
[the SRA]," and therefore fall within the scope of the SRA's choice-of-law
provision (whether or not that provision governs them).  (SRA § 9.12).

Moreover, the SRA's choice-of-law provision is broader than *Populus
Media*'s choice-of-law provision in a different, and more important, regard.  As
a reminder, the choice-of-law provision in *Populus Media* instructed that court
to apply:

> the laws of the State of New York, without regard to its
> conflicts of laws or choice of law rules.

(Populus Contract 57).  The SRA, on the other hand, instructed this Court to
apply:

> the Laws of the State of New York without giving effect
> to any conflict-of-law rules or principles that would
> result in the application of the Laws of any other
> jurisdiction.

(SRA § 9.12).  Accordingly, the SRA's choice-of-law provision explicitly
instructed this Court not to "appl[y] [] the Laws of any other jurisdiction," a
command that the choice-of-law provision in *Populus Media* noticeably lacks.
(*See id.*).  Stated differently, the SRA's choice-of-law provision speaks more

forcefully to the issue of which law applies than *Populus Media*'s choice-of-law provision.  For this reason, Judge Vyskocil's decision in *Populus Media* is not necessarily at odds with the MTD Order.[5]

Even assuming that *Populus Media* is at odds with the MTD Order, Judge Vyskocil's analysis in *Populus Media* does not persuade the Court that its decision in the MTD Order was incorrect.  Judge Vyskocil did not quote any part of the relevant choice-of-law provision in *Populus Media*, let alone the part of the provision that is most pertinent to the question before this Court, *i.e.*, that New York law governs "without regard to its conflicts of laws or choice of law rules."  (Populus Contract 57).  What is more, neither party put the relevant language before Judge Vyskocil in their briefing; in fact, the party that argued for the application of New York law to the dispute specifically excised "without regard to its conflict of law or choice of law rules" from the choice-of-law provision when it quoted the provision therein.  (*See Memorandum of Law in Support of Motion to Dismiss Amended Complaint* at 15, *Populus Media*,

---

[5]     For that matter, neither is the decision in *Eccles* v. *Shamrock Capital Advisors, LLC*, the case that the Vanderhaegen Defendants brought to the Court's attention in their May 29, 2024 Notice of Supplemental Authority.  (*See* Dkt. #69 (citing — N.E.3d —, 2024 WL 2331737 (N.Y. May 23, 2024))).  In that case, there was no equivalent choice-of-law provision agreeing to apply New York law.  As Plaintiffs explained in their response to the Vanderhaegen Defendants' letter:

> *Eccles* does not address, much less support, Defendants' contention that the internal affairs doctrine supersedes a broad choice-of-law provision, such as the one in the SRA.  As the New York Court of Appeals reaffirmed just a few months ago, "when the parties have chosen New York Law, a court may not contravene that choice through a common-law conflicts analysis."  *Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, [41 N.Y.3d 462, 476] (2024).

(Dkt. #70).  The Court thus similarly declines to reconsider the MTD Order on the basis of *Eccles*.

No. 23 Civ. 4160 (MKV), Dkt. #16-2; *Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint* at 16, *Populus Media*, No. 23 Civ. 4160 (MKV), Dkt. #20). For this reason, the Court is concerned that the *Populus Media* Court may not have been given a full opportunity to grapple with the question of whether a broad, forceful choice-of-law provision could foreclose the application of the internal affairs doctrine.

The instant case is also readily distinguishable from *BBS Norwalk*. The choice-of-law provision at issue there did not purport to apply without regard to conflict-of-law rules and principles at all. *BBS Norwalk*, 60 F. Supp. 2d at 128 ("[T]he [contract] ... provides that '[t]his Agreement shall be governed and construed in accordance with the laws of the State of New York.'" (citation omitted)). In fact, *BBS Norwalk* explicitly distinguished cases, like this one, in which the parties agreed to apply New York substantive law "without giving effect to the principles of conflict of laws." *Id.* at 129 (quoting *Turtur* v. *Rothschild Registry Intern., Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994)) (contrasting its circumstances with that of *Turtur*, wherein the applicable contract provision indicated that claims were to be governed by New York law "without giving effect to the principles of conflict of laws").

The final argument that the Vanderhaegen Defendants make in support of reconsideration is that the Court overlooked the policy reasons supporting application of the internal affairs doctrine and the "adverse consequences" that would flow from allowing choice-of-law provisions to preclude application of the internal affairs doctrine. (Van. Br. 9-10). On this point, the Vanderhaegen

Defendants argue that applying the internal affairs doctrine in spite of any choice-of-law provision to which the parties have assented "promotes the public policy interests in certainty, predictability, and uniform treatment by declining to elevate individual private contracts over the choice of the jurisdiction of incorporation upon the company's formation." (*Id.* at 9). Conversely, they argue that applying the MTD Order's rule "could permit corporate insiders to use choice-of-law provisions to select the corporate law most favorable to them when transacting with the company they serve[,]" and lead the "issue of fiduciary duties ... [to] be subject to the laws of literally dozens of jurisdictions, due to the existence of boilerplate choice-of-law provisions in contracts entered into by [the] parties." (*Id.* at 9-10).

The Court disagrees that the relevant policy concerns favor the Vanderhaegen Defendants' position. In the Court's view, the best way to "maintain predictability" and "eliminat[e] uncertainty regarding the governing law" is by enforcing choice-of-law provisions in contracting parties' agreements as those provisions are written. *IRB-Brasil Resseguros, S.A.* v. *Inepar Invs., S.A.*, 20 N.Y.3d 310, 316 (2012). This belief is undergirded by the basic notion that "[f]reedom of contract is an important and deeply rooted public policy in [New York.]" *U.S. Bank N.A.* v. *DLJ Mortg. Cap., Inc.*, 38 N.Y.3d 169, 177 (2022). And as the New York Court of Appeals recently emphasized, "when the parties have chosen New York Law, a court may not contravene that choice through a common-law conflicts analysis." *Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, 41 N.Y.3d 462, 476 (2024).

For these reasons, the Court declines to reconsider its decision to apply New York law in determining the existence and scope of the Vanderhaegen Defendants' fiduciary duties in the MTD Order.

### 3. The Court Denies the Vanderhaegen Defendants' Request to Certify This Issue for Interlocutory Appeal

In the alternative, the Vanderhaegen Defendants seek to certify the issue of what jurisdiction's law governs their alleged fiduciary duties. To review, Section 1292(b) provides that a district court may certify an order for interlocutory appeal where such order "[i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] [] an immediate appeal from th[at] order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Further, "even where the three legislative criteria of [S]ection 1292(b) appear to be met, district courts have unfettered discretion to deny certification if other factors counsel against it." *Transp. Workers*, 358 F. Supp. 2d at 351 (internal citations and quotation marks omitted). For the reasons set forth below, the Court finds that the Vanderhaegen Defendants have failed to show that the MTD Order meets the second criteria of Section 1292(b); further, the Court finds as a matter of its own discretion that interlocutory appeal is inappropriate in this instance. The Court thus denies the Vanderhaegen Defendants' request to certify that portion of the MTD Order for interlocutory appeal.

### a.    The Court Finds That Interlocutory Appeal Would Resolve a Controlling Question of Law

As to the first prong of Section 1292(b), the Vanderhaegen Defendants claim that the issue of what law governs the existence and scope of their fiduciary duties is a "controlling question of law" within the meaning of Section 1292(b) because a definitive answer would "narrow[] and streamline[] [the action] in several key respects" and a "resolution of the proposed certified question has potentially wide precedential value." (Van. Br. 11-12). The Court agrees.

By way of background, to constitute a Section 1292(b) "controlling question of law," a question of law must be purely one of law, in that "the reviewing court could decide [it] quickly and cleanly without having to study the record.'" *CBRE, Inc.* v. *Pace Gallery of New York, Inc.*, No. 17 Civ. 2452 (ALC) (SN), 2022 WL 683744, at *4 (S.D.N.Y. Mar. 8, 2022) (quoting *Capitol Records, LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)). Further, a question of law is "controlling" within the meaning of Section 1292(b) "[i] if reversal of the district court's order could significantly affect the conduct of the action or [ii] if the certified issue has precedential value for a large number of cases." *Tantaros* v. *Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (quoting *Glatt* v. *Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)). That said, while "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action," the question "need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer*, 921

F.2d at 24.  In the same regard, a question of law need not "affect a wide range of pending cases" to be "controlling."  *Id.*

The Court understands the issue before it — whether a broadly written choice-of-law provision can preclude application of the internal affairs doctrine — as a "pure question of law" that the Second Circuit "could decide quickly and cleanly without having to study the record.'"  *CBRE*, 2022 WL 683744, at *4 (citation omitted).  The Court further acknowledges that, if the Second Circuit were to reverse the MTD Order on the issue, it would impact this litigation.  Such a finding would require the Court to analyze the existence and scope of the Vanderhaegen Defendants' fiduciary duties under Belgian law, which could lead to the dismissal of Plaintiffs' fiduciary duty and constructive fraud claims (Counts Five and Six), as well as Plaintiffs' remaining fraud claims (Counts One and Two), to the extent those claims rely on a fraud-by-omission theory.  For this reason, the question is sufficiently "controlling" under Section 1292(b).  (*See* Van. Br. 11-12).  *See also Capitol Records*, 972 F. Supp. 2d at 552 (finding first prong of Section 1292(b) satisfied where resolution of question on appeal could result in dismissal with respect to some but not all "videos alleged to be infringing" plaintiff's copyright).

Finally, an answer from the Circuit on this issue would likely prove valuable to "a large number of cases."  *Tantaros*, 465 F. Supp. 3d at 389-90.  As the Vanderhaegen Defendants rightly point out, "[c]ourts in this Circuit frequently hear disputes involving companies incorporated in jurisdictions located throughout the United States and around the globe," and these

disputes often feature choice-of-law provisions similar to that found in the SRA. (Van. Br. 12). The issuance of the *Populus Media* decision one day after this Court issued the MTD Order stands as proof of the same. *See generally Populus Media*, 2024 WL 1313493. For these reasons, the Court finds that the issue of what law governs the existence and scope of the Vanderhaegen Defendants' fiduciary duties is a "controlling question of law" within the meaning of Section 1292(b).

> **b.    The Court Finds That There Is Not Substantial Ground for Difference of Opinion**

It is at the second hurdle that the Vanderhaegen Defendants fall. That is, the Vanderhaegen Defendants argue that there is a substantial ground for a difference of opinion on the issue of what law governs the existence and scope of their fiduciary duties, thereby fulfilling the second prong of the Section 1292(b) test. This prong is met when "[i] there is conflicting authority on the issue, or [ii] the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.*, No. 06 Civ. 7828 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007). The Court does not believe the issue at hand satisfies this prong, and as such, finds this deficiency a basis to decline to certify interlocutory appeal.

The Court focuses first on the Vanderhaegen Defendants' claim of conflicting authority. As examples of conflicting authority, the Vanderhaegen Defendants again cite to *Populus Media* and *BBS Norwalk*, asserting that those decisions conflict with the MTD Order for substantially the same reasons discussed in Section B.2, *supra*. In the Vanderhaegen Defendants' view,

"[d]iffering rulings by this Court in the [MTD Order], on the one hand, and in *Populus Media* and *BBS Norwalk,* on the other, show substantial ground for difference of opinion." (Van. Br. 12). However, as the Court explained in Section B.2, *supra*, the MTD Order, *Populus Media*, and *BBS Norwalk* can easily be reconciled, once one acknowledges that the three corresponding choice-of-law provisions are meaningfully different. Accordingly, the Court does not believe that there are necessarily "differing rulings [by district court judges] within this Circuit" on the instant issue. (Van. Reply 9 (quoting *Yu* v. *Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017))).

Nor does the Court believe that the issue before it is "particularly difficult" or necessarily a "matter of first impression for the Second Circuit." *In re Enron*, 2007 WL 2780394, at *1. Indeed, the Second Circuit has long acknowledged that, at a minimum, the internal affairs doctrine is not a rule of automatic application; that is, it has recognized that there are instances in which it is appropriate for courts to apply the law of a state other than the place of incorporation to issues surrounding the internal affairs of a corporation. *See, e.g.*, *Hau Yin To* v. *HSBC Holdings, PLC*, 700 F. App'x 66, 69 (2d Cir. 2017) (summary order) (noting that "New York courts reject a *per se* application of the internal affairs doctrine"); *cf. In re BP. p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 309 & n. 20 (S.D.N.Y. 2007) (noting that "the internal affairs doctrine is not automatically applied" in this Circuit, even "in derivative actions alleging a breach of fiduciary duty," though ultimately applying the doctrine). Accordingly, the Court declines to conclude that there is a

"substantial ground for a difference of opinion" within the meaning of Section 1292(b) on the issue of what law governs the existence and scope of the Vanderhaegen Defendants' fiduciary duties.

### c.    The Court Finds That an Interlocutory Appeal Would Materially Advance the Litigation

The Vanderhaegen Defendants finally argue that an interlocutory appeal "would materially advance this litigation by potentially streamlining the legal and factual issues to be decided before and during trial," fulfilling the third prong of the Section 1292(b) test.  (Van. Br. 14).  On this prong, the Court agrees.  Section 1292(b)'s third factor is met when an intermediate appeal "promises to advance the time for trial or to shorten the time required for trial."  *Transp. Workers,* 358 F. Supp. 2d at 350.  In practice, the third prong is "closely connected" to the first, *In re 650 Fifth Ave.*, No. 08 Civ. 10934 (RJH), 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012); accordingly, the analysis set forth in Section B.3.a, *supra*, tends to support the notion that interlocutory appeal would advance this litigation.  Further, the Court acknowledges that "[r]esolving this question now also avoids the possibility that a post-trial appeal would require a new trial applying a different standard."  *Glatt*, 2013 WL 5405696, at *3.  For these reasons, the Court finds that the third prong is satisfied.

### d.    The Court Exercises Its Discretion to Decline to Certify the Issue for Interlocutory Appeal

Having failed to demonstrate that all three prongs of Section 1292(b) are met, the Vanderhaegen Defendants cannot succeed in their effort to garner

certification of the challenged portion of the MTD Order for interlocutory appeal. Beyond the Section 1292(b) criteria, however, the Court does not believe certification of that portion of the MTD Order is appropriate as a matter of its own discretion. As previously stated, certification of a non-final order pursuant to Section 1292(b) is an extraordinary procedure, over which the Court retains "unfettered discretion," *Transp. Workers*, 358 F. Supp. 2d at 351, and which is only granted in "exceptional circumstances," *In re Ambac*, 693 F. Supp. 2d at 282. A brief review of cases in which such a grant has been made is illuminative.

In *Klinghoffer* v. *S.N.C. Achille Lauro*, for example, the Second Circuit granted Defendant Palestine Liberation Organization's (the "PLO") petition to appeal the district court's decision denying its motion to dismiss. 921 F.2d at 23. That action arose from the October 1985 seizure of the Italian passenger liner, the *Achille Lauro*, in the Mediterranean Sea, and the PLO's alleged role in the concurrent death of Leon Klinghoffer, one of the *Achille Lauro*'s passengers. *Id.* at 22-23. Several passengers brought suit against the *Achille Lauro*'s owner and charterer, as well as various other entities, alleging that the defendants failed to take sufficient steps to prevent or warn passengers about potential piracy. *Id.* at 23. Two of the Defendants impleaded the PLO, which thereafter moved to dismiss all claims against it on the grounds that (i) the district court had no subject matter jurisdiction, because the case presented a nonjusticiable political question; (ii) the PLO was immune from suit because it is a sovereign state and a Permanent Observer at the United Nations; (iii) the district court

38

lacked personal jurisdiction over it; and (iv) the PLO, assuming it was an unincorporated association, lacked the capacity to be sued and had not been properly served.  *Id.*

The Second Circuit found that interlocutory appeal was appropriate.  In addition to concluding that the Section 1292(b) criteria were met, the Court, quoting the district judge, explained:

> [t]he undefined juristic nature of the PLO [which the district court held may be treated in this litigation as an unincorporated association], the PLO's argument that it is entitled to "functional" immunity since its presence in New York is principally connected with its status as an Observer at the United Nations, and the special attention given to the PLO by Congress in the Anti–Terrorism Act of 1987, 22 U.S.C. §§ 5201-03 (1988), argue that this is an exceptional case in which section 1292(b) certification is appropriate.

*Klinghoffer*, 921 F.2d at 25.

In another case, *In re WorldCom, Inc. Securities Litigation*, the Court considered a motion for interlocutory appeal of two orders issued in the "extensive [multidistrict] litigation ['MDL'] over the alleged accounting fraud at WorldCom, Inc. ('WorldCom') … [which litigation] include[d] both class and individual actions, and [wa]s brought on behalf of some of the largest pension funds in the country, as well as on behalf of individual investors."  No. 02 Civ. 3288 (DLC), 2003 WL 22953644, at *1 (S.D.N.Y. Dec. 16, 2003).  Plaintiffs sought certification of one question in that litigation, which the district court answered in the affirmative: "[w]hether Securities Act claims can be removed [to federal court] under Section 1452[a] [of Title 28 of the United States Code] despite the prohibition against removal contained in Section 22(a) [of the

Securities Act]."  *Id.* at *4.  The question arose from the inherent tension between two federal statutes:  Section 1452, which "permits the removal to federal court of any claim over which there is federal subject matter jurisdiction pursuant to Section 1334" — which in turn "grants comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate" — and Section 22(a), which "bars the removal of certain Securities Act claims from state to federal court."  *Id.* at *2 (internal quotation marks omitted).

The district court granted Plaintiffs' motion to certify the question for interlocutory appeal.  *In re WorldCom*, 2003 WL 22953644, at *9.  In making that decision, the court emphasized that the question at issue was one "of federal subject matter jurisdiction that affects a large number of plaintiffs" in an MDL, the answer to which "w[ould] determine whether scores of lawsuits [we]re properly before th[e] Court."  *Id.* at *5.  Furthermore, the court noted that the issue "ha[d] generated and [was continuing] to generate duplicative and time-consuming motion practice," and, "[i]f not resolved at th[at] juncture" (i.*e.*, while the cases were consolidated before the Southern District for pre-trial purposes by an MDL Panel), would have "need[ed] to be addressed by separate courts of appeals" once the MDL's constituent cases were ultimately returned to their home districts.  *Id.* at *8.

These cases bring into sharp relief the truly "exceptional" nature of the circumstances "justify[ing] a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *McNeil* v. *Aguilos*,

820 F. Supp. 77, 79 (S.D.N.Y. 1993) (citation omitted).  When compared to the circumstances of these cases, the case before this Court — an ordinary matter of contract interpretation arising from a dispute over the sale of two investors' interests in a start-up — appears decidedly less "exceptional."  The Court thus finds that, as a matter of discretion, a grant of interlocutory appeal is inappropriate in this instance.

## CONCLUSION

Based upon the foregoing analysis, the Court DENIES Plaintiffs' motion seeking reconsideration of the MTD Order.  The Court further DENIES the Vanderhaegen Defendants' motion for the same.  Finally, the Court DENIES the Vanderhaegen Defendants' request to certify a portion of the MTD Order for interlocutory appeal.

The Clerk of Court is directed to terminate the pending motions at docket entries 54 and 57.

SO ORDERED.

Dated:      August 15, 2024
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge